# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Joan B. Gottschall | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 1133 | **DATE** | 1/18/2002 |
| **CASE TITLE** | O'Brien vs. Encotech Construction | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
     ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Motion by Plaintiffs for reconsideration is granted. The Court concludes that the release executed by Encotech employees are void as a matter of law an orders that corrective notices may be sent to employees who executed such releases. Any notice proposed to be sent to the Encotech employees must be first approved by the court.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | JAN 23 2002 date docketed | 56 |
| ✓ | Docketing to mail notices. | | | |
| | Mail AO 450 form. | U.S. DISTRICT COURT CLERK | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| RJ | courtroom deputy's initials | 02 JAN 22 AM 10:00 | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |



UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

ROBERT O'BRIEN, individually and on behalf )
of a class of employees similarly situated )
)
                   Plaintiff, )   Case No. 00 C 1133
    v. )
)
ENCOTECH CONSTRUCTION SERVICES, )   Judge Joan B. Gottschall
INC., and HOWARD FRANK, )
)   JAN 2 3 2002
                   Defendants. )

## MEMORANDUM OPINION AND ORDER

Before the court is plaintiffs' Motion for Reconsideration of this court's order of September 19, 2001. For the reasons stated herein, the motion is granted. The court reconsiders its September 19 order and voids the releases signed by members of the plaintiff class in their entirety.

On September 27, 2000, after the removal of this case to this court and shortly after the conclusion of an unsuccessful settlement conference with the assigned magistrate judge, defendant Frank, the owner of defendant Encotech, called all of Encotech's employees into his office individually and requested that each employee execute a release of his or her claims arising under the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C.A. §§ 201-262 (West 1998), the Illinois Minimum Wage Law ("IMWL"), 820 ILCS 105/1 to /15 (West 1999), and the Illinois Wage Payment and Collection Act ("IWPCA"), 820 ILCS 115/1 to /15, in return for a monetary

1

56

payment. On October 6, 2001, at plaintiffs' request, the court enjoined defendants from continuing to solicit releases, finding that defendants' conduct undermined the court's ability to supervise the fairness of notice to the employee class. But in its September 19 order, after reviewing Illinois law and finding that it did not address the validity of employee-executed releases of IMWL and IWPCA claims, the court concluded that Illinois' general presumption of the validity of releases, based on Illinois' public policy in favor of the peaceful and voluntary resolution of claims, should save the releases, absent an evidentiary showing of fraud, duress, mutual mistake or unconscionability. Accordingly, the court severed the indisputably invalid FLSA portions of the releases from the putatively valid IMWL and IWPCA portions. The court in addition granted plaintiffs' motion for class certification, subject to the possible exclusion of the employees who signed a release from the state law class.

Subsequent to this court's September 19 order, Judge Lefkow, in *Ladegaard v. Hard Rock Concrete Cutters, Inc.*, No. 00 C 5755, 2001 U.S. Dist. LEXIS 18370 (N.D. Ill. Nov. 7, 2001), held that releases essentially identical to those involved in the case at bar (drafted by the same law firm) should be entirely invalidated, both as to federal and state claims. Having reviewed Judge Lefkow's reasoning, this court is persuaded that her conclusion is better-grounded than that reached by this court. Accordingly, the court reconsiders its order of September 19 and invalidates the releases at issue as to plaintiffs' federal and state claims.

As Judge Lefkow's opinion makes clear, there is strong support in Illinois law for the proposition that the state's minimum wage and wage payment laws involve public rights and embody the state's public policy. *See People ex rel. Dep't of Labor v. K. Reinke, Jr. & Co.*, 746

2

N.E.2d 12, 16 (Ill. App. Ct. 2001); *People ex rel. Martin v. Schwartz Oil Field Servs., Inc.*, 561 N.E.2d 201, 203 (Ill. App. Ct. 1990); *People ex rel. Martin v. Lipkowitz*, 589 N.E.2d 182, 185 (Ill. App. Ct. 1992). Such laws provide a floor, both as to amount and frequency, below which parties are precluded from contracting with respect to payment for labor services. Such laws by their very nature deny parties the right to contract for the payment of wages at amounts less, and at intervals less frequent, than the law requires; it is their manifest public policy to limit freedom of contract with respect to the payment of wages in order to serve more important public purposes. Permitting an employer to violate a minimum wage law, and escape legal consequences by paying an employee something to forget about the violation, undermines the proper functioning of these laws almost as effectively as simply failing to follow them in the first instance.

As Judge Lefkow has also pointed out, the Illinois Supreme Court has held that where a right is conferred for the benefit of the public at large rather than solely for the benefit of the individual, the right is nonwaivable. *See Ladegaard*, 2001 U.S. Dist. LEXIS 18370, at *20 (Nov. 7, 2000) (citing *Recht v. Kelly*, 82 Ill. 147 (1876)). And where a right is conferred for the benefit of the public at large, and the implementation of that right requires a limitation of the directly-involved individuals' freedom of contract, the argument in favor of nonwaivability is particularly compelling. The legislature is clearly stating that the larger public purposes served by such wage laws trump individual contract rights.

In *Brooklyn Savings Bank v. O'Neil*, 324 U.S. 697, 704-07 (1945), the Supreme Court employed such reasoning in holding that FLSA rights are nonwaivable. That an Illinois court

3

faced with this issue would follow *Brooklyn Savings Bank* and adopt such reasoning is strongly suggested by the principle recognized by Illinois cases that federal decisions dealing with federal labor law issues are persuasive, even if not controlling, in interpreting a similar Illinois labor law in the absence of Illinois authority. *See Bernardi v. Village of North Pekin*, 482 N.E.2d 101, 102 (Ill. App. Ct. 1985).

Defendants argue that the FLSA is an imperfect analogy to the Illinois wage laws at issue here because the FLSA explicitly provides for settlement mechanisms so that a defendant can avoid the costs and delays inherent in civil litigation. Absent such a statutory provision for an alternative dispute resolution mechanism, defendants maintain, numerous important public policies argue in favor of allowing the parties to compromise their differences informally. Congress apparently disagreed: for the first eleven years of the FLSA's existence, there was no such mechanism and the only recognized way to settle claims was through a court-approved settlement. *See Walton v. United Consumers Club*, 786 F.2d 303, 306 (7th Cir. 1986).

Moreover, the alternative dispute resolution mechanism in the FLSA provides protections to insure that the public purposes of the law are not undermined, something woefully lacking in the procedure attempted by defendant here. Section 16(c), quoted in defendant's Response to Plaintiff's Motion for Reconsideration at page 9, provides that the Secretary of Labor is authorized to "supervise the payment of the unpaid minimum wages or the unpaid overtime compensation owing to any employee or employees under section 206 or section 207 of this title, and the agreement of any employee to accept such payment shall upon payment in full constitute a waiver by such employee of any right he may have under subsection (b) of this section to such

unpaid minimum wages or unpaid overtime compensation . . . ." 29 U.S.C.A. § 216(c). Not only have defendants failed to seek such official supervision (defendants could easily have sought the assistance of the Secretary of Labor in resolving plaintiffs' FLSA claims), but defendants drafted a release which denies liability and purports to offer "some additional compensation" to enhance its employees' job satisfaction. A private release in this context not only undermines the statutory goals involved but provides inadequate assurance that the practices giving rise to the dispute will be discontinued. Either a settlement of the FLSA claims supervised by the Secretary of Labor or a settlement of all claims supervised by the court can assure that a company's obligations to its employees are clarified for both parties so that the possibility of statutory violations in the future is substantially minimized. A private settlement, under the guise of "some additional compensation," is highly unlikely to leave either party with an accurate sense of its rights and obligations. And, more important, it leaves open the real possibility that the plaintiffs will never receive that to which the law entitles them.

Defendants complain that without an Illinois alternative dispute resolution mechanism comparable to that provided by the FLSA, "the only way in which an employer and employee could resolve a dispute concerning overtime compensation is to file a claim." That may be so, but the filing of a claim does not impose a great burden on the parties. Shortly after this case arrived in federal court, this court provided the parties with a court-supervised settlement conference, but the parties were unable to compromise their differences. If the parties were, or in the future are, able to do so, this court will not hesitate to approve any reasonable settlement. Expensive and time-consuming litigation is not necessitated by the requirement that a settlement

5

be approved by the court. It is necessitated by the parties' inability to reach an agreement on their respective rights and obligations.

This court is not convinced by defendants' argument that, if court approval for settlement is required, "no properly advised employer would voluntarily pay an employee a disputed amount under the IMWL." (Resp. at 10.) Employers' incentive to voluntarily comply with the IMWL (and thereby to avoid a dispute altogether) or to simply pay the amounts due under the IMWL when a dispute has arisen (and thereby to avoid costly litigation) is magnified, not diminished, by requiring employers and employees to obtain court approval before they can enter into a binding settlement. Properly advised employers will realize that their employees, although not technically barred from filing suit, are unlikely to do so if they have received all that the law entitles them to.

Defendants have cited three Illinois cases which they argue permit releases of wage claims or claims under wage payment laws. But this court finds none of them pertinent to the issue involved here. In *Murphy v. S-M Delaware, Inc.*, 420 N.E.2d 456 (Ill. App. Ct. 1981), the plaintiff, who was both a salesman for and a shareholder in Salerno-Megowen Biscuit Company, was part of a group of shareholders who approved a merger of the company into Associated Biscuits Chicago, Inc. The merger agreement, which plaintiff approved, included a general release in favor of the two merging companies. After the merger, plaintiff sued to recover sales commissions he claimed had been withheld from him by Salerno over the course of many years. The trial court dismissed the claim and the appellate court affirmed. As far as this court can tell, there was no discussion of the issue involved in the case at bar. Moreover, the situation at issue

in *Murphy* was significantly different from what is involved here. No corporation could be sold if selling shareholders could not validly release corporate debts as consideration for the stock price.

*Swavely v. Freeway Ford Truck Sales, Inc.*, 700 N.E.2d 181 (Ill. App. Ct. 1998), upheld the validity of an agreement between plaintiff's deceased husband and his employer by which, in the event of plaintiff's husband's death, his unpaid commissions were to be paid to his wife. The employer argued that the agreement violated the Illinois Wage Payment and Collection Act because it amounted to the assignment of the husband's wages to a third party in a manner not specifically allowed by the Act. The appellate court reversed the trial court's ruling dismissing plaintiff's complaint, holding that while the Act mandates that an employer pay an employee wages, it does not prohibit the employee from assigning his wages, as long as the assignment inures to his benefit. *Id.* at 189. The appellate court's sensible conclusion that the Act did not defeat a claim by the deceased employee's widow against the employer does not suggest that the employee could have excused his employer's failure to pay him wages in accordance with the law.

Finally, *Hurd v. Wildman, Harrold, Allen & Dixon*, 707 N.E.2d 609 (Ill. App. Ct. 1999), rejected a claim that a release executed by a nonequity law firm partner as part of a separation agreement with his law firm was void as against the public policy of the Wage Payment and Collection Act. The basis for the court's rejection of the claim that the release was void was that plaintiff failed to adequately plead facts regarding the Act's applicability. *Id.* at 614. Nothing in the opinion suggests that the court would have rejected the claim had it been properly pled.

7

For the reasons stated above, the court grants plaintiffs' Motion for Reconsideration, concludes that the releases executed by Encotech employees are void as a matter of law and orders that corrective notices may be sent to employees who executed such releases. Any notice proposed to be sent to the Encotech employees must be first approved by the court.

ENTER:

JOAN B. GOTTSCHALL
United States District Judge

DATED: January 18, 2002