## UNITED STATES DISTRICT COURT FOR
## THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

ROBERT O'BRIEN, individually
and on behalf of a class of
employees, similarly situated, et al.,

        Plaintiff,

        v.

ENCOTECH CONSTRUCTION
SERVICES, INC., and
HOWARD FRANK,

        Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

**DOCKETED**

APR 1 5 2003

Case No.  00 C 1133

Judge Gottschall

Magistrate Judge Nolan

**FILED**

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT
APR 14 2003

### NOTICE OF FILING

To:    Noah A. Finkel
        Seyfarth Shaw
        55 East Monroe Street, Suite 4200
        Chicago, Illinois  60603

PLEASE TAKE NOTICE that on April 14, 2003, 1 I filed the attached Motion for Summary Judgment, Memorandum in Support and Appendix with the Clerk of the Court at 219 South Dearborn, Chicago, Illinois, 20th floor, a copy of which is attached hereto.

        By

One of Plaintiffs' Attorneys

Jac A. Cotiguala
Luanne M. Galovich
JAC A. COTIGUALA & ASSOCIATES
30 North LaSalle Street, Suite 1724
Chicago, IL 60602
(312) 939-2100

74

## CERTIFICATE OF SERVICE

To:    Noah A. Finkel
        Seyfarth Shaw
        55 East Monroe Street, Suite 4200
        Chicago, Illinois 60603

I, Luanne M. Galovich, an attorney, hereby certify that a true and correct copy of the within and foregoing notice and pleading was served by hand delivery, on April 14, 2003, at or before 5:00 p.m., upon the above attorneys of record at the above listed addresses.

Luanne M. Galovich

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

ROBERT O'BRIEN, et al., )
)
)
Plaintiffs, )
)
v. ) Case No. 00 C 1133
)
ENCOTECH CONSTRUCTION ) Judge Gottschall
SERVICES, INC., a corporation, and )
HOWARD FRANK, ) Magistrate Judge Nolan
)
)
Defendants. )

**PLAINTIFFS' MOTION FOR
PARTIAL SUMMARY JUDGMENT**

NOW COME Plaintiffs, by and through their attorneys, JAC A. COTIGUALA and LUANNE
M. GALOVICH, and respectfully request that this Court grant Plaintiffs' Motion for Partial Summary
Judgment and enter a Findings and Judgment Order as follows:

1.     Encotech Construction Services, Inc. and Howard Frank (hereinafter "defendants") are
jointly and severally liable for unpaid work time for the time period January 28, 1997 through January 31,
2000.

2.     Judgment in favor of the plaintiffs and against the defendants for unpaid work time for the
time period January 28, 1997 through January 31, 2000 in an amount to be determined at trial, including
overtime compensation, where applicable.

1

3.     Defendants failed to keep accurate records of all hours worked during the time period January 28, 1997 through January 31, 2000.

WHEREFORE plaintiffs request this Court to enter judgment in favor of plaintiffs and against defendant Encotech Construction Services, Inc. and defendant Howard Frank both jointly and severally as to liability on unpaid wages for the time period January 28, 1997 through January 31, 2000 and schedule this matter for a prove up on the amount defendants owe plaintiffs in accordance with Anderson v. Mt. Clemens Pottery Co., 328 U.s. 680 (1946).

Respectfully Submitted,
ROBERT O'BRIEN, et. al.

By: _____

One of Plaintiffs' Attorneys

Jac A. Cotiguala
Luanne M. Galovich
JAC A. COTIGUALA & ASSOCIATES
30 North LaSalle Street, Suite 1724
Chicago, Illinois 60602
Telephone:  (312) 939-2100

2

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

ROBERT O'BRIEN, et al.,              )
                                     )
                                     )
          Plaintiffs,                )
                                     )
     v.                              )          Case No.   00 C 1133
                                     )
ENCOTECH CONSTRUCTION                )          Judge Gottschall
SERVICES, INC., a corporation, and   )
HOWARD FRANK,                        )          Magistrate Judge Nolan
                                     )
                                     )
          Defendants.                )

**DOCKETED**
APR 1 5 2003

FILED
APR 1 4 2003
MICHAEL W. DOBBINS
CLERK U.S. DISTRICT COURT

### PLAINTIFFS' RULE 56
### STATEMENT OF FACTS

NOW COME Plaintiffs, by and through their attorneys, JAC A. COTIGUALA and LUANNE M. GALOVICH, and in support of Plaintiffs' Motion for Partial Summary Judgment and in accordance with Local Court Rule 56 state as follows:

1.      Plaintiffs were, or still are, employed by Encotech Construction Services, Inc. Tab "A" - Answer to Complaint, Count I ¶ 2.

2.      Plaintiffs were, or still are, an "employee" as defined by Sec. 3(e) of the FLSA, 29 U.S.C. 203(e). Tab "A" - Answer to Complaint, Count III ¶ 4.

3.      At any and all times relevant to this lawsuit, at defendants' request, plaintiff and the class he represents performed labor services for defendants. Tab "A" - Answer to Complaint, Count II ¶ 2.

4.      Defendant Encotech is subject to the provisions of the Illinois Minimum Wage Law, 820 ILCS 105/1 et seq. Tab "A" - Answer to Complaint, Count I ¶ 3.

5.      Defendant Howard Frank is the Chief Executive Officer of Encotech. Tab "A" - Answer to Complaint, Count I ¶ 4.

6.      At any and all times relevant to this lawsuit, defendant, Encotech, was, and still is, an "enterprise engaged in commerce" within the meaning of Sec. 3(s) of the FLSA, 29 U.S.C.(s). Tab "A" - Answer to Complaint, Count III ¶ 2.

7.      At any and all times relevant to this lawsuit, defendants Encotech and Howard Frank are each an "employer" within the meaning of Sec. 3(d), 29 U.S.C. 203(d). Tab "A" - Answer to Complaint, Count III ¶ 3.

8.      Howard Frank is the secretary treasurer of Encotech.  Tab "C" - Dep Tr. of Frank p. 5 lines 3.

9.      Diane L. Frank, Howard's wife, is the president and sole shareholder of Encotech. Tab "C" - Dep Tr. of Frank p. 5 lines 6-10.

10.     Diane L. Frank's duties at Encotech do not include any of the day-to-day activities of Encotech. Tab "C" - Dep. Tr. of Frank p. 6..

11.     Diane L. Frank performs duties as president only at the annual meeting. Tab "C" - Dep. Tr. of Frank pp. 5-6 lines 23 and 1.

12.     The pay practices at Encotech are made solely by Howard Frank. Tab "C" - Dep. Tr. of Frank p. 6 lines 6-11.

13.     Howard Frank created the pay practices of Encotech.  Tab "B" - Defendants' Responses to Plaintiffs' Requests to Admit No. 2.

14.     Howard Frank had the ability to change the pay practices and policies at Encotech at all times relevant to this lawsuit to be observed by the corporate defendant Encotech. Tab "B" - Defendants' Responses to Plaintiffs' Requests to Admit No. 3; Tab "C" - Dep Tr. of Frank p. 6 lines 6-11.

15. To the extent that drive time did not exceed one hour, Encotech pay policies prohibited payment of wages for time spent driving to the first customer job of the day from the yard. Tab "B" - Defendants' Responses to Plaintiffs' Requests to Admit No. 4.

16. To the extent that drive time did not exceed one hour, Encotech pay policies prohibited payment of wages for time spent driving to the last customer job of the day to the yard. Tab "B" - Defendants' Responses to Plaintiffs' Requests to Admit No. 5.

17. Howard Frank could have required payment of wages for all drive time for all relevant time periods to this lawsuit. Tab "B" - Defendants' Responses to Plaintiffs' Requests to Admit No. 6.

18. For some if not all of the relevant time period Encotech did not recognize as compensable, work time spent in picking up work orders at the shop at the beginning of the day. Tab "B" - Defendants' Responses to Plaintiffs' Requests to Admit No. 7.

19. For some if not all of the relevant time period Encotech did not recognize as compensable, work time spent in filling up water tanks in vehicles at the beginning of the work day. Tab "B" - Defendants' Responses to Plaintiffs' Requests to Admit No. 9.

20. For some if not all of the relevant time period Encotech did not recognize as compensable, work time spent in hooking up trailers at the shop which were needed for work that day at the beginning of the work day. Tab "B" - Defendants' Responses to Plaintiffs' Requests to Admit No. 10.

21. For some if not all of the relevant time period Encotech did not recognize as compensable, work time spent on performing safety and operational checks on the vehicle or trailer at the beginning of the work day. Tab "B" - Defendants' Responses to Plaintiffs' Requests to Admit No. 13.

22. For some if not all of the relevant time period Encotech did not recognize as compensable, work time spent at the end of the work day spent completing paperwork on completed work after leaving the last job of the work day. Tab "B" - Defendants' Responses to Plaintiffs' Requests to Admit No. 20.

23.     For some if not all of the relevant time Encotech did not recognize as compensable, work time spent at the end of the work day submitting completed paper work to the office. Tab "B" - Defendants' Responses to Plaintiffs' Requests to Admit No. 21.

24.     Sometime after this lawsuit was filed Frank changed the pay practices of Encotech to provide pay to class members who were assigned vehicles for the time spent driving from the yard to the first customer job site of the workday and from the last customer job site of the day to the yard. Tab "B" - Defendants' Responses to Plaintiffs' Requests to Admit No. 29.

25.     In 1997 Howard Frank required most of the vans to be parked at the yard at night. Tab "C" - Dep Tr. of Frank p. 8 lines 9-11.

26.     When an Encotech employee would start to get paid varied by the employee's job description. Tab "C" - Dep Tr. of Frank p. 12 lines 4-15.

27.     Typically a core driller at Encotech would begin to get paid when he arrived at the job site. Dep Tr. of Frank p. 13 lines 19-22.

28.     Typically a wall sawer at Encotech would begin to get paid when he arrived at the job site. Tab "C" - Dep Tr. of Frank p. 13 lines 23-24.

29.     Typically a slab sawer at Encotech would begin to get paid when he arrived at the job site. Tab "C" - Dep Tr. of Frank p. 14 lines 2-3.

30.     Howard Frank did not know whether Encotech would pay their employees from the time that they started loading the scaffolding on their vehicle through the end of the workday. Tab "C" - Dep Tr. of Frank p. 18 lines 11-15.

31.     Defendants did not have a handout regarding what they did and didn't pay for when they were hired. Tab "C" - Dep Tr. of Frank p. 22 lines 1-4.

32. Encotech employees were paid from the time they arrived at the first job site until they left the last job site, unless they traveled for more than an hour. Tab "C" - Dep Tr. of Frank p. 22 lines 16-24.

33. If an Encotech employee traveled more than an hour, they would be paid at their regular rate for all the time spent after the first hour. Tab "C" - Dep Tr. of Frank p. 22 lines 19-24.

34. The regular rate paid by Encotech for travel time in excess of one hour was the union rate or above if that employee's regular rate was higher than union scale. Tab "C" - Dep Tr. of Frank p. 23 lines 1-3.

35. Encotech started paying for all travel time around the date this lawsuit was filed. Tab "C" - Dep Tr. of Frank p. 24 lines 5-10.

36. When this lawsuit was filed Encotech began paying $5.15 per hour for travel time. Tab "C" - Dep Tr. of Frank p. 30 lines 5-17.

37. Encotech still pays ten dollars an hour for travel time if an employee works less than forty hours a week and fifteen dollars an hour if the employee works more than forty hours a week. Tab "C" - Dep Tr. of Frank p. 28 lines 6-10.

38. Some time after this lawsuit was filed Encotech began paying ten dollars an hour if an employee worked less than forty hours a week and fifteen dollars an hour if the employee worked more than forty hours a week. Tab "C" - Dep Tr. of Frank p. 27 and 30.

39. Howard Frank changed the travel time rate from $5.15 to $10.00 per hour because he didn't think $5.15 per hour was enough. Tab "C" - Dep Tr. of Frank p. 31 lines 1-4.

40.     It was the option of Encotech employees to decide whether they wanted to fill their water tanks at the yard at the beginning of the day. Tab "C" - Dep Tr. of Frank p. 36 lines 12-16.

41.     Howard Frank is unaware of who did and who didn't fill their water tanks at the yard at the beginning of the day. Tab "C" - Dep Tr. of Frank p. 36 lines 17-22.

42.     Howard Frank was aware that an employee could fill their water tanks at the yard at the beginning of the day. Tab "C" - Dep Tr. of Frank p. 37 lines 2-3.

43.     Howard Frank did not know whether laborers got paid for loading equipment other than Bobcats and backhoes. Tab "C" - Dep Tr. of Frank p. 39 lines 14-17.

44.     Howard Frank did not know whether laborers got paid for loading additional supplies in the truck. Tab "C" - Dep Tr. of Frank p. 39 lines 18-21.

45.     Howard Frank never told the laborers that they would get paid for loading additional supplies in the truck. Tab "C" - Dep Tr. of Frank p. 39 lines 22-24.

46.     Employees of Encotech do not get paid for hooking up of trailers in the morning or the unhooking of trailers at night. Tab "C" - Dep Tr. of Frank p. 43 lines 12-17.

47.     Employees are not paid for performing safety and operational checks on their vehicle or trailer at the beginning of the workday. Tab "C" - Dep Tr. of Frank p. 44 lines 1-3.

48.     Encotech would not compensate employees for performing minor repairs to equipment or vehicles at the beginning of the workday. Tab "C" - Dep Tr. of Frank p. 44 lines 7-17.

49.     Helpers at Encotech are not paid for travel time. Tab "C" - Dep Tr. of Frank p. 51 lines 18-24.

50.      Helpers at Encotech begin to get paid when they arrive at the first job site. Tab "C" - Dep Tr. of Frank p. 51 lines 23-24.

51.      On occasion between January 1, 1997 and September 11, 2001 work orders had to be picked up at the yard. Tab "C" - Dep Tr. of Frank p. 54 lines 15-19.

52.      Prior to September 11, 2001 bits were maintained at Encotech's yard. Tab "C" - Dep Tr. of Frank p. 54 lines 20-23.

53.      Employees of Encotech occasionally had to go to the yard to get another bit. Tab "C" - Dep Tr. of Frank p. 55 lines 1-6.

54.      Howard Frank expected to see operators at the yard before 7:00 a.m. getting ready to drive the trucks out to the first job site of the day. Tab "C" - Dep Tr. of Frank p. 56 – 57 lines 16-24 and 1.

55.      Howard Frank did not specifically instruct helpers that they could not do any work if they arrived at the yard in the morning before the start of the first job. Tab "C" - Dep Tr. of Frank p. 58 lines 2-7.

56.      Howard Frank is unaware of whether helpers did any work at the yard before they started the ride to the first job site of the day. Tab "C" - Dep Tr. of Frank p. 58 lines 8-11.

57.      If an employee traveled an hour and fifteen minutes on a route that usually took fifteen minutes because of road conditions or weather, Encotech probably would not pay for the additional time. Tab "C" - Dep Tr. of Frank p. 62.

58.     Encotech would only pay regular rate for travel time over an hour if they thought a job was more than an hour away or close to an hour away. Tab "C" - Dep Tr. of Frank p. 64 lines 10-12.

59.     There was no written rule regarding the point at which an employee would be paid for travel time over an hour. Tab "C" - Dep Tr. of Frank p. 65 lines 1-18.

60.     Operators were expected to unload the debris they brought back to the yard for dumping. Tab "C" - Dep Tr. of Frank p. 66 lines 3-9.

61.     Laborers were paid half an hour to dump the truck at the end of the day. Tab "C" - Dep Tr. of Frank p. 66-67 lines 24 and 1.

62.     Helpers would generally drive back to the yard with the operators. Tab "C" - Dep Tr. of Frank p. 68 and 69 lines 23-24 and 1.

63.     If an operator would haul a piece of concrete back to the yard in the back of the van he would not be paid for unloading it. Tab "C" - Dep Tr. of Frank p. 70 lines 12-20.

64.     Howard Frank admits that he didn't pay his employees for any time spent to the first job site of the day or from the last job site of the day, provided it took them less than one hour to travel. Tab "C" - Dep Tr. of Frank p. 116 lines 8-17.

65.     Howard Frank admits that he didn't pay his employees for work they would have done at the Encotech yard other than equipment removal. Tab "C" - Dep Tr. of Frank p. 118 and 119 lines 19-24 and 1-12.

66.     Howard Frank never told his employees that they should not regularly inspect their vehicles. Tab "C" - Dep Tr. of Frank p. 119 lines 8-10.

67.     Employees would not get paid if they did not write down their travel time. Tab "C" - Dep Tr. of Frank p. 121 lines 19-21.

68.     Howard Frank never informed any one of the jobs that they could get paid travel time on. Tab "C" - Dep Tr. of Frank p.122 lines 13-17.

69.     Howard Frank never instructed any one else to instruct employees regarding what jobs that they could get travel time on. Tab "C" - Dep Tr. of Frank p.122 lines 8-12.

70.     Howard Frank was aware throughout the entire time period of this lawsuit that employees were not recording their travel time. Tab "C" - Dep Tr. of Frank p.123 lines 15-18.

71.     Howard Frank would ask employees on a weekly basis to record their travel time. Tab "C" - Dep Tr. of Frank p.123 lines 19-21.

72.     Encotech never reprimanded employees for not recording their travel time. Tab "C" - Dep Tr. of Frank p.123 lines 22-24.

73.     Howard Frank only expected employees to record their travel time on their time cards if that time exceeded one hour. Tab "C" - Dep Tr. of Frank p.127 lines 12-17.

74.     If an employee traveled less than an hour, Howard Frank only expected employees who used Bobcats, electric saws, backhoes and forklifts to record their drive time. Tab "C" - Dep Tr. of Frank p. 128.

75.     The electric saw crews were paid on occasion, when they had concrete that they had to offload.. Tab "C" - Dep Tr. of Frank p. 129.

76.     Encotech maintained no records regarding travel time other than the entries made on time cards by the employees. Tab "C" - Dep Tr. of Frank p. 130 lines 11-14.

77.     Helpers were not instructed not to do any work for Encotech when they were off the job site. Tab "C" - Dep Tr. of Frank p. 135 lines 5-8.

78.     Helpers were not paid if the did any work for Encotech when they were off the job site.
Tab "C" - Dep Tr. of Frank p. 135 lines 9-14.

79.     Occasionally operators would need to drive their truck back to the yard at the end of the
day for repairs. Tab "C" - Dep Tr. of Frank p. 140 lines 17-24.

80.     It was customary for employees to come in to pick up their paychecks and needed
supplies on Wednesday after they were done with work. Tab "C" - Dep Tr. of Frank p. 142, 143-44 lines
3-6 and 24 and 1-2.

81.     Since September 11, 2001, an employee just parks the truck in the yard and the trucks are
loaded, and unloaded for him. Tab "C" - Dep Tr. of Frank p. 144 lines 3-22.

82.     On or about January 2002 Encotech employees were given fax machines for their homes to
fax their time cards and field tickets to Encotech by Tuesday morning. Tab "C" - Dep Tr. of Frank p. 150,
152 lines 17-19.

83.     Employees are not paid for the time they spend faxing their time cards and field tickets to
Encotech. Tab "C" - Dep Tr. of Frank p. 153 lines 11-13.

84.     Employees fax their time cards and field tickets to Encotech either at the beginning of the
day, at the end of their day, or on the weekend. Tab "C" - Dep Tr. of Frank p. 153 lines 14-23.

85.     A typical construction site start time is 7:00 a.m. Tab "C" - Dep Tr. of Frank p. 186 lines.

86.     Encotech did not have a normal show up time for employees to arrive at the yard in the
morning. Tab "C" - Dep Tr. of Frank p. 188 lines 10-14.

87.     The first management person arrived at the yard at 6:00 a.m. Tab "C" - Dep Tr. of Frank p.
188 lines 22-24.

88.     Typically employees would arrive at the yard between 15 and 30 minutes before they had
to be at the first job site of the day. Tab "C" - Dep Tr. of Frank p. 190 lines 14-20.

89.     An employee must have necessary supplies in their truck at the beginning of the work day. Tab "C" - Dep Tr. of Frank p. 192 lines.14-22

90.     Equipment on the trucks had to be operable. Tab "C" - Dep Tr. of Frank p.192-193 lines 23-24 and 1.

91.     If a piece of equipment needed repairing either the mechanic would pick it up or the operator would bring it in to the yard. Tab "C" - Dep Tr. of Frank p. 194 lines 5-7.

92.     If an employee brought back broken equipment to the yard they were not paid for the travel time. Tab "C" - Dep Tr. of Frank p. 194 lines 8-11.

93.     If an employee needed supplies or a blade, they had to pick them up in the morning before going to the job site. Tab "C" - Dep Tr. of Frank p. 194 lines 12-24.

94.     If a job site did not have water facilities then Howard Frank expected the truck water tanks to be filled by the operators at the yard or at their home. Tab "C" - Dep Tr. of Frank p. 196 lines 18-20.

95.     The smallest water tank carried by the trucks is 50 gallons and the largest is 100 gallons. Tab "C" - Dep Tr. of Frank p. 197, 198 lines 1-3, 24 and 1.

96.     Drivers did not always fill out their paper work before they left the job site at the end of the day. Tab "C" - Dep Tr. of Frank p. 203 lines 1-10.

97.     If an employee did not complete their paper work at the job site they did not get paid for the time it took them to fill it out. Tab "C" - Dep Tr. of Frank p. 204 lines 1-4.

98.     The only time records that Encotech has is what the employees wrote on their time cards and on the job tickets. Tab "C" - Dep Tr. of Frank p. 206 lines 8-12.

99.     Most employees did not write their travel time on their time cards if it was what the company would consider travel time less than an hour at the beginning or end of the day. Tab "C" - Dep Tr. of Frank p. 206 lines 13-18.

100.     Prior to the filing of this lawsuit, most trucks were parked in the Encotech yard at night. Tab "C" - Dep Tr. of Frank p. 209.

101.     Employees who take their trucks home at night are not paid for travel time until they get to the first job of the day and are not paid for the time to fill water at home. Tab "C" - Dep Tr. of Frank p. 210, 211.

102.     If an employee who drives their truck home at night drops the truck off at the yard for repairs they are not paid for the drive time. Tab "C" - Dep Tr. of Frank p. 213.

103.     If an employee who drives their truck home at night drives in at the end of the day to pick up needed supplies to do work the next morning, they are also not paid for the drive time into the yard. Tab "C" - Dep Tr. of Frank p. 214.

104.     If an employee who drives their truck home at night drives to the yard at the end of the day to drop off their job tickets, they are not paid for that travel time. Tab "C" - Dep Tr. of Frank p. 214.

105.     Most helpers are picked up in the yard in the morning and dropped off at the yard at night. Tab "C" - Dep Tr. of Frank p. 214 and 217.

106.     If an employee who drives their truck home at night comes to the yard the next morning to pick up a helper he is not compensated for the travel time from the yard to the first job site of the day. Tab "C" - Dep Tr. of Frank p. 214.

107.     If an employee who drives their truck home at night comes to the yard after the last job site of the day to drop off a helper, they are not compensated for the travel time from the last job site to the yard. Tab "C" - Dep Tr. of Frank p. 214-215.

108.     Documents of hours worked are filled out by the employees as to the time they arrive at a job. Tab "D" - 30(b)(6) Dep Tr. of Frank p. 6.

109.     Hours worked by employees were recorded on field records and on timecards. 30(b)(6) Dep Tr. of Frank p. 6.

110. Hours worked by employees were recorded on timecards filled out by the employees. Tab "D" - 30(b)(6) Dep Tr. of Frank p. 6.

111. Encotech did not pay every employee for their drive time from the yard to the first customer job site of the day. Tab "D" - 30(b)(6) Dep Tr. of Frank p. 14.

112. Most Encotech employees do not copy their field forms on to their timecards. Tab "D" - 30(b)(6) Dep Tr. of Frank p. 14.

113. Most Encotech employees did not record their drive from the yard to the first customer site off the day during the time period January 1, 1997 and the spring of 2000. Tab "D" - 30(b)(6) Dep Tr. of Frank p. 14-16.

114. Employees who were not going to get paid for their drive time did not put that time on the timecards. Tab "D" - 30(b)(6) Dep Tr. of Frank p. 17.

115. Encotech never informed employees that the company was willing to pay for the time that they took at the beginning of the day to do a safety check on the equipment or vehicles. Tab "D" - 30(b)(6) Dep Tr. of Frank p. 20.

116. The one or two person forklift which did not go out every day was added to the Encotech business equipment in 2001. Tab "D" - 30(b)(6) Dep Tr. of Frank p. 30.

117. Encotech did not maintain records on the amount of time spent by class members explaining needed repair work on the vehicle or equipment to the shop mechanic at the yard at the end of the day. Tab "D" - 30(b)(6) Dep Tr. of Frank p 32.

118. Encotech did not maintain records on the amount of time spent by class members upon returning to the yard during the relevant time period or picking up work orders for work scheduled the next day. Tab "D" - 30(b)(6) Dep Tr. of Frank p. 32.

119.     Howard Frank did not believe that Encotech compensated class members for time that they spent waiting for repairs to be done on their equipment that they needed to bring out to the field that day. Tab "D" - 30(b)(6) Dep Tr. of Frank p. 35.

120.     Encotech has no written policies, memorandum, or work rules regarding what time the class members would be paid for. Tab "D" - 30(b)(6) Dep Tr. of Frank p. 35.

121.     Encotech does not have any written policies, memorandum, or work rules regarding what time the employees were expected to expend, but not get paid for. Tab "D" - 30(b)(6) Dep Tr. of Frank p. 35.

122.     Encotech held mandatory safety meetings during the relevant time period. Tab "D" - 30(b)(6) Dep Tr. of Frank p. 36.

123.     Employees were compensated for one hour which was inclusive of drive time to the yard from the last job site of the day and attendance at the mandatory safety meeting. Tab "D" - 30(b)(6) Dep Tr. of Frank p. 37.

124.     Encotech maintained no records as to when the mandatory safety meetings began and ended. Tab "D" - 30(b)(6) Dep Tr. of Frank p. 38.

125.     Encotech wanted all equipment restored to good clean operating use when employees were finished using it. Tab "D" - 30(b)(6) Dep Tr. of Frank p. 47; Exhibit 2, page 14 "Equipment" section, 3rd sentence.

126.     Employees were not always paid for cleaning the equipment at the shop. Tab "D" - 30(b)(6) Dep Tr. of Frank p. 48.

127.     Even in the instances where Encotech paid for maintenance time at the shop, they did not pay every employee for the travel time from the last job of the day back to the shop. Tab "D" - 30(b)(6) Dep Tr. of Frank p. 48.

128.    Prior to September of 2001 not all employees were compensated for bringing special equipment back to the storage area at the end of the day. Tab "D" - 30(b)(6) Dep Tr. of Frank p. 48-50.

129.    Employees would typically return to the yard to pick up mandatory safety equipment such as gloves, eyewear, ear protection and dust masks on Wednesdays when they picked up their paychecks. Tab "D" - 30(b)(6) Dep Tr. of Frank p. 54.

130.    Employees were not compensated for coming to the yard to replenish the mandatory protective safety equipment in their trucks. Tab "D" - 30(b)(6) Dep Tr. of Frank p. 55.

131.    Littering and poor housekeeping was a chargeable offense for which discipline could be meted out. Tab "D" - 30(b)(6) Dep Tr. of Frank p. 55-56.

132.    Encotech, according to its policy and procedure manual, could discharge an employee on the fourth offense of littering or poor housekeeping. Tab "D" - 30(b)(6) Dep Tr. of Frank p. 56; Exhibit 2, page 2 of Disciplinary Action Schedule, "Littering poor housekeeping".

133.    Encotech reserved the right to discharge employees for falsifying work records which include time records. Tab "D" - 30(b)(6) Dep Tr. of Frank p. 57; Exhibit 2, page 3 of Disciplinary Action Schedule.

Respectfully Submitted,
ROBERT O'BRIEN, et. al.


By: _____
One of Plaintiffs' Attorneys

Jac A. Cotiguala
Luanne M. Galovich
JAC A. COTIGUALA & ASSOCIATES
30 North LaSalle Street, Suite 1724
Chicago, Illinois 60602
Telephone: (312) 939-2100