IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ROBERT O'BRIEN, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 00 C 1133 |
| | ) | |
| ENCOTECH CONSTRUCTION | ) | Judge Gottschall |
| SERVICES, INC., a corporation, and | ) | |
| HOWARD FRANK, | ) | Magistrate Judge Nolan |
| | ) | |
| Defendants. | ) | |

DOCKETED APR 1 5 2003

FILED APR 1 4 2003 MICHAEL W. DOBBINS CLERK, U.S. DISTRICT COURT

### MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

NOW COME plaintiffs, by and through their attorneys, JAC A. COTIGUALA and LUANNE M. GALOVICH, and for their Memorandum in Support of their Motion for Partial Summary Judgment with respect to Counts I, II, III and IV of plaintiffs' current complaint and pursuant to Rule 56 of the Federal Rules of Civil Procedure and Local Rule 56(a), state as follows:

### INTRODUCTION

This case was filed by Plaintiff Robert O'Brien in the Circuit Court of Cook County, Chancery Division on January 28, 2000 and subsequently removed to this Court. The current version of the four count Complaint alleges an Illinois Minimum Wage Law ("IMWL") violation (Count I); an Illinois Wage Payment and Collection Act ("IWPCA") violation (Count II); a Fair Labor Standards Act ("FLSA"), 29 U.S.C. 201, *et seq.*, violation (Count III) and a willful FLSA

1



violation (Count IV). Plaintiffs have been granted leave to maintain this action as a class action for violations of the state law under Fed.R.Civ.Pro.23(b)(3). Additionally, plaintiffs initiated a collective action suit for Counts III and IV in which defendants' employees were provided the opportunity to opt-in to the class action FLSA claims.

Plaintiffs' motion for partial summary judgment is directed at all Counts. Plaintiffs in this motion seek a determination that defendants are jointly and severally liable for failure to pay plaintiffs for all hours worked at their regular rate of pay (Count III) (or at the very least minimum wage (Counts I, III and IV)) and at one and one-half times their regular rate for hours worked over 40 hours in a week under state law in Counts I and II; and under federal law in Counts III and IV.

## STATEMENT OF FACTS

During some, or all times relevant to this complaint, each of the plaintiffs were employees of all defendants within the meaning of the relevant Illinois and federal statutes. Defendants are engaged in the business of cutting concrete. The equipment for this enterprise is housed in defendants' yard. Such equipment would include consumable materials such as saw blades, concrete anchors, drill bits and dust masks as well as trucks, trailers, Bobcats, forklifts and other lighter equipment. Though some of the employees were allowed to bring their assigned trucks home at night, prior to the filing of this action, most trucks were parked at the company yard at night. These trucks were picked up by their operators the morning of every workday. Furthermore, the operators' helpers were required to report to the yard for pickup by their operators on a given day. After work, these helpers would be dropped off at the yard by their operator.

2

Essential to the operation of the business at the worksite was a supply of water as most concrete cutting equipment relies on water while operating. Unless it was known that the jobsite had water available, the water was carried on board the trucks in tanks varying in size from 50 to 100 gallons. Defendants expected the operators to fill these tanks every morning when they arrived at the yard their first jobsite before they drove to the worksite. Even if the truck had been driven home, the operator would be expected to fill it at home (as their first jobsite) as a necessary part of the operation of the business.

Other duties were performed in the morning at the yard before departure for the customer worksite. These might include checking the oil levels in the vehicles along with other safety and operational checks. Supplies such as saw blades or drill bits would be picked up, and heavy equipments like the forklift would be loaded onto trailers and the trailers in turn were hitched to the trucks for use at the jobsite. Occasionally, other necessary equipment, not already on board from the last workday, would also be loaded at this time. It was defendants' requirement that all equipment be operational during the workday and minor repairs to equipment would be performed during these morning visits to the yard prior to the drive to the worksite. Pursuant to defendants' requirement that the equipment be kept in a clean condition, they would be washed and cleaned at this time or at the end of the day. Good housekeeping was required and discipline could be imposed for failure in this regard. Work orders for the day would also be picked up at this time along with the helper for that particular operator. On the way to the jobsite, fuel would be purchased for the

3

vehicles and equipment, if needed. Thus it was typical for workers to arrive 15 to 30 minutes before actual departure for the jobsite. Indeed, defendants expected the operators to arrive at the yard before 7:00 a.m. to get ready for the drive to the first customer jobsite.

At the end of the workday, the trucks would sometimes be returned to the yard for necessary maintenance and repair. Debris such as concrete slabs removed from the jobsite were unloaded at this time. The employees would also finish the job tickets of the day if they did not complete them on the jobsite. Every Wednesday, paychecks would be picked up at the yard. At this time, it was customary for mandatory safety equipment such as dust masks, protective eye and ear wear would be replenished.

During the time period January 28, 1997 to January 31, 2000 it was defendants' policy that the time spent on these activities, including the drive times to and from the customer worksite were not compensated unless defendants determined that each trip was in excess of one hour. This hour was not measured in actual time spent but on defendants' arbitrary nominal determination. For example, delays caused by traffic, weather or breakdown were not considered.

While explicit instruction were not given to the employees to perform the aforementioned duties before and after the drive to and from the yard, defendants knew these essential tasks were performed at these times and never instructed the employees to stop performing these tasks at these times.

4

It is undisputed that some, if not most of the hours spent on performance of these tasks and the time to drive to and from the jobsite were uncompensated.

## SUMMARY OF ARGUMENT

Defendants admit they did not pay their employees for time spent in the morning at the company yard for job related activities such as picking up work orders, repairing or cleaning equipment, loading supplies, water and equipment or picking up helpers who were required to show up at the yard. Defendants also did not pay their employees for time spent at the end of the workday in returning trucks to the yard for repairs, picking up mandatory safety equipment, finishing job reports and dropping off helpers. Because these work activities preceded the drive to the jobsite in the morning or followed the drive back to the yard in the evening, the drive time was also compensable.

Defendants may dispute some particular hour worked or the other. However, for summary judgment purposes, it is enough for a finding of liability that some, or indeed *any of these hours worked* were uncompensated.

It is undisputed that defendants did not pay compensation unless the nominal time for the drive exceeded one hour. Thus, plaintiffs are entitled to a finding of liability under both state and federal law and partial summary judgment must be entered in Counts I, II and III for defendants' failure to pay plaintiffs for hours worked.

5

Howard Frank had the ability to change the pay practices of Encotech and was the person who instituted thee non-payment for work time including travel time both before and after the time spent at Encotech customer worksites. As such he is an employer within the definition of 29 U.S.C. 203(d). Chao v. Casting, Acting and Talent, 146 Lab. Cas. ¶ 34,507, 2001 U.S.Dist. Lexis 23304 (C.D. Cal. 2001).

As Howard Frank set the policy that Encotech would not pay for work time spent by his outside employees both before and after work at the customer job sites his actions prove a willful violation of the FLSA which allows the statute of limitations to go back three years from the date the suit was filed rather than the regular two year time period under the FLSA.

Finally, defendants admit knowledge of these violations. This makes these violations willful under the FLSA and the Illinois minimum Wage Act and partial summary judgment must therefore also be granted in Count IV.

## ARGUMENT

1. <u>Plaintiffs Were Not Compensated For All Hours Worked</u>.

The Illinois Minimum Wage Law, (820 ILCS 105/4); the Illinois Wage Payment and Collection Act, 820 ILCS 115/4; and the Fair Labor Standards Act, 29 U.S.C. §206, all require employers such as defendants in this case to pay employees such as plaintiffs for every hour worked.

6

The FLSA definition of the term "employ" "includes to suffer or permit to work." 29 U.S.C. § 203(g). The FLSA does not define "work". Thee regulations which accompany the FLSA describe compensable time as that spent for the benefit of the employer, with the employer's knowledge and that is considered a "principal activity" of the employee. All of this time is considered to be hours worked and therefore compensable. 29 C.F.R. §§ 785.7, 785.9 and 785.11. Principal activity includes all duties, tasks or actions that are an integral part of the employee's job. 29 C.F,R. § 785.24. There is a definition of "hours worked" which excepts clothes changing and wash-up time which are excluded in a union contract by express terms or customs and practice. 29 U.S.C. § 203(o). These exceptions however are not involved in this case.

The U.S. Supreme Court initially found that an employee is entitled to pay for all time spent in "physical or mental exertions (whether burdensome or not) controlled or required by the employer and pursued necessarily and primarily for the benefit of the employer and his business". Tennessee Coal v. Muscoda, 321 U.S. 590, 598 (1944). In Tennessee Coal, the miners' travel from the entrance of the mine to the face of the coal deposit was found to be compensable time. The concept of compensable time was further explained by the Court to not require any exertion. The Court stated:

> [A]n employer, if he chooses, may hire a man to do nothing, or to do nothing but wait for something to happen... Readiness to serve may be hired, quite as much as service itself, and time spent lying in wait for threats to the safety of the employer's property may be treated by the

7

parties as a benefit to the employer. Armour v. Wantock, 323 U.S. 126, 133 (1944).

(Armour involved fire fighters in private industry.)

The compensable time workweek ordinarily includes "all time during which an employee is necessarily required to be on the employer's premises, on duty or at a prescribed work place, the time spent in these activities must be accorded appropriate compensation. Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 690-691 (1946). Compensable time is determined by the FLSA which sets minimum standards below which no employer may legally pay. Union contracts that violate the FLSA concept of compensable time are not enforceable except for the two express statutory exclusions – changing clothes or wash-up time, and Portal-to-Portal, 29 U.S.C. 251 et seq.

### A. Travel Time Is Compensable In This Case

Central to the case at bar is whether plaintiffs' travel time is compensable because these are the hours that were not paid by defendants. Thus the analysis must begin with determining when work actually commences.

Travel between work sites during the work day has always been compensable time under the concept that it is "all in a day's work". 29 C.F.R. § 785.38.

The Portal-to-Portal Act of 1947, 29 U.S.C. §§ 251-262, eliminates from work time certain travel time and other similar "preliminary" or "postliminary" activities which do not include principle activities that are indispensable to its performance. 29 U.S.C. § 203(o), 29

8

C.F.R. § 790.8. However, the following activities were held integral and indispensable for principal job duties and therefore outside Portal-to-Portal exemption: servicing company truck each morning; driving it from the yard to the plant for loading and returning to the yard; waiting in line for loading; and cleaning and refueling the truck. Mitchell v. Mitchell Truck Line, 286 F.2d 721, 725 (5th Cir. 1961).

   i.   Employees performed activities which were integral and indispensable.

The facts in this case show that plaintiffs performed activities which were integral and indispensable for their principal job duties: They arrived at the company yard and filled the company trucks' water tanks which varied from 50 to 100 gallons in capacity. They checked the oil in the trucks as well as other safety related and operational checks. Minor repairs would also be made at this time. Sometimes, they would fill the trucks and other equipment with fuel needed for the work that day. These morning trips to the yard prior to driving to the jobsites encompassed picking up of supplies such as saw blades or other necessary equipment such as backhoes, Bobcats or other equipment not already on board a given truck. Trailers were connected to the trucks and work orders for that day were pickup at this time. On Wednesdays, paychecks, along with mandatory safety equipment were picked up. This performance of activities, which were integral and indispensable for plaintiffs' principal job duties, placed the drive time from the yard to the jobsite within the exemption of the Portal to Portal Act.

The end of workday activities at the yard also placed the drive back to the yard outside of the Portal to Portal Act. Plaintiffs would complete paperwork on work finished that workday. The

9

operators would also be expected to dump debris such as large pieces of concrete upon arrival at the yard at the end of the workday. Occasionally, the operators would need to drive the trucks back to the yard at the end of the day for repairs or maintenance to it or other equipment.

It is uncontroverted that defendants did not compensate plaintiffs for morning or afternoon drive times, nor the time spent on the other necessary activities unless the nominal travel time (without consideration of actual delaying factors such as traffic or weather) exceeded an hour.

Additionally, if an employer requires employees to report at a designated meeting place to receive instructions or to pick up and carry tools, "travel from the designated place to the work place is part of the day's work, and must be counted as hours worked regardless of contract, custom, or practice"). Dole v. Enduro Plumbing, Inc., 1990 U.S. Dist. LEXIS 20135, 1990 WL 252270, at *5 (C.D. Cal. Oct. 16, 1990).

In this case, defendants admit that work was actually performed by their employees at the yard before traveling to the first customer work site of the day and at the company yard following completion of the work at the last customer work site of the day. Helpers were required to show up at the yard in the morning and be picked up by his designated operator. The helpers who were picked up at the yard in the morning had to be dropped off there in the evening. The helpers helped load, unload and perform other essential tasks at the yard.

Under this test, travel from the designated place to the work place is part of the day's work, and must be counted as hours worked.

10

### ii. Employees Were Required To Park Vehicles At Company Yard.

In Brennan v. E.R. Field, Inc., 495 F.2d 749, 751 (1st Cir. 1974), the court held that driving a company truck to and from job site is compensable because the employer derived benefit from that activity. Furthermore, when the employee is required to report to a central location and initiates their workday there by performing some work, regardless of how trivial, the travel to the next job site that day is compensable time.

Providing employees service trucks which they may park at home after work does not change this analysis. When the employee drives directly to a job site at the beginning of the work day and from the last job site of the day to home the travel time is considered non-compensable commute time (despite the fact that the necessary equipment and supplies to perform the job are being delivered to the job site). 29 C.F.R. § 785.34. However, when the employee is requested to go to a central location to pick up equipment, supplies, additional people, work orders or some other work activity, then the work day commences at the central location and travel to the next work site is all in a day's work, and therefore compensable time. 29 C.F.R. § 785.38.

Finally, it is of no consequence that not all (or perhaps even any) of these activities were performed by each operator each and every day. For purposes of this partial summary judgment, it is sufficient that on some (or even just one) of the days complained of, defendants violated both federal and state law regarding required payment of compensation for work performed. The failure to record this unpaid time will impact the prove-up hearing in the amount of damages.

11

## 2. Howard Frank is Jointly and Severally Liable

Howard Frank is the natural-person defendant. His corporate position is the secretary-treasurer of defendant Encotech and he is the chief operating officer. He is the person responsible for thee policies including pay practices of Encotech. He handles the day-to-day activity at Encotech and exercises directly or indirectly all of the actions of Encotech regarding its employees. As such he is a joint employer with Encotech of the plaintiffs. 29 U,.S.C. § 203(d). Chao v. Casting Acting and Talent, Supra.

By virtue of his status as a joint employer of the employees, Howard Frank is liable, jointly and severally with Encotech, for the amounts due to the employees under the FLSA. Donovan v. Sabine Irrigation Co., 695 F.2d 190, 194 (5th Cir. 1983), Cert denied sub nom. Alberding v. Donovan, 463 U.S. 1207(1983), Reh'g denied, 462 U.S. 1249 (FLSA§ 3(d) "sufficiently broad to encompass an individual who... effectively dominates the administration (of a corporate employer) or otherwise acts, or has the power to act, on (its) behalf... vis-à-vis employees, even if he does not have an ownership interest; personal liability imposed for a monetary award); Dole v. Elliott Travel Co., 942 F.2d 962, 966 (6th Cir,. 1991) (for such personal liability to attach it is "... not required that a party have exclusive control... (but rather) only 'operational control of significant aspects of [the firm]'s day-to-day function'"); Martin v. D. Gunnels, Inc., 30 Wage & Hour Cas. (BNA) 997, 119 Lab. Cas. (CCH) ¶ 35,535 (C.D. Cal., 1991, J. Lew).

### 3. Defendants' actions were willful.

In McLaughlin v. Richland Shoe Co., 486 U.S. 128 (1986), the U.S. supreme Court found that the standard of willfulness used in awarding liquidated damages under the ADEA, 29 U.S.C. 626(b) also applies in determining willful violations under the FLSA thus enlarging the statute of limitation to three years. This standard was the applicable standard in the Seventh Circuit since Walton v. United Consumer Club, 786 F.2d 203 (1986).

If defendants knew conduct violates the FLSA or showed reckless disregard for whether their conduct complied with the Act then the violation is willful. Richland Shoe at 133.

Frank implemented a policy to pay for drive time that he considered in excess of an hour and for some limited work (unloading) debris at the yard while refusing to pay for all other work. In light of this policy his failure to pay for the actual drive time and for the other work both before and after the work at the customer job sites is either intentional or reckless disregard of the wage and hour law. As the effect is the same in either event – 3 year statute of limitations for the FLSA and willful violation of the Illinois Minimum Wage Act – this Court need not determine whether Frank and therefore Encotech intentionally or recklessly violated the laws.

### CONCLUSION

For any or all of the foregoing reasons, plaintiffs have shown that they are entitled to summary judgment finding defendants liable for failure to pay plaintiffs wages under Counts I, II III and IV for the time period January 28, 1997 through January 31, 2000 and that defendants Encotech

13

Construction Services Inc. and Howard Frank are jointly and severally liable for that violation to the plaintiffs.

Respectfully submitted,

_____
One Of Plaintiffs' Attorneys

Jac A. Cotiguala
Luanne M. Galovich
JAC A. COTIGUALA & ASSOCIATES
30 N. LaSalle, Suite 1724
Chicago, Illinois 60602
(312) 939-2100