UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

ROBERT O'BRIEN, individually )
and on behalf of a class of )
employees, similarly situated, et al., )
)
)
Plaintiff, )
)
v. ) Case No. 00 C 1133
)
ENCOTECH CONSTRUCTION ) Judge Gottschall
SERVICES, INC., and )
HOWARD FRANK, )
) Magistrate Judge Nolan
)
)
Defendants. )
)

FILED
MAY 14 2003
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

DOCKETED
MAY 15 2003

## NOTICE OF FILING

To: Noah A. Finkel
Seyfarth Shaw
55 East Monroe Street, Suite 4200
Chicago, Illinois 60603

PLEASE TAKE NOTICE that on May 14, 2003, I I filed the attached Response to Defendants' Motion for Summary Judgment, Local Rule 56.1 Statement and attached Appendix with the Clerk of the Court at 219 South Dearborn, Chicago, Illinois, 20th floor, a copy of which is attached hereto.

By: _____
One of Plaintiffs' Attorneys

Jac A. Cotiguala
Luanne M. Galovich
JAC A. COTIGUALA & ASSOCIATES
30 North LaSalle Street, Suite 1724
Chicago, IL 60602
(312) 939-2100



## CERTIFICATE OF SERVICE

To: Noah A. Finkel
Seyfarth Shaw
55 East Monroe Street, Suite 4200
Chicago, Illinois 60603

I, Luanne M. Galovich, an attorney, hereby certify that a true and correct copy of the within and foregoing notice and pleading was served by hand delivery, on May 14, 2003, at or before 5:00 p.m., upon the above attorneys of record at the above listed addresses.

                                                            Luanne M. Galovich

UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ROBERT O'BRIEN, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Case No. 00 C 1133 |
| ) | |
| ENCOTECH CONSTRUCTION ) | Judge Gottschall |
| SERVICES, INC., a corporation, and ) | |
| HOWARD FRANK, ) | Magistrate Judge Nolan |
| ) | |
| Defendants. ) | |

FILED
MAY 14 2003
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

DOCKETED
MAY 15 2003

PLAINTIFFS' RESPONSE TO DEFENDANTS'
MOTION FOR PARTIAL SUMMARY JUDGMENT

I. OVERVIEW

Defendants concede that until this lawsuit was filed, they did not pay members of the plaintiff class for work hours before or after time spent at the customer job sites except for travel time that Defendants determined took longer than one hour.[1] (Defendants' undisputed facts Nos. 10 & 11). Such travel time in excess of one hour was paid at the then current contract rate of pay.

As Encotech required the vehicles to be parked overnight in their yard, everyone had to go to the yard prior to the first customer job site starting time and return to the yard after ending the day at the last customer job site of the day. Defendants' admission

---

[1] Plaintiffs will use the term "recognized travel time" within this brief because defendants only paid for travel time which they recognized to be over an hour – not for actual travel time over an hour.

1

that they did not pay anything for this time prior to May 2000 is an admission against interest which forms the basis of summary judgment as to liability on Counts I, II and III.

The admitted payment of between $5.15 and $10.00 per hour after this lawsuit was filed creates liability as a matter of law between the amount admittedly paid and the rate required under Count II, the Illinois Wage Payment and Collection Act Count. The regular rate was set by defendants when they consistently paid for recognized drive time in excess of one hour at the current contractual pay rate at the time. Furthermore, that pay rate for time to and from the yard has been an explicit provision of the relevant Union contract since 2001.

As Defendants admit to paying the contract rate for drive time in excess of an hour at all times relevant before the filing of this lawsuit, their conduct has established that they had the requisite knowledge for a willful violation of the FLSA, as set forth in Count IV, when they deliberately failed to pay for drive times under one hour.

## II. DEFENDANTS' ARGUMENTS

Defendants request this Court to enter partial summary judgment in their favor on four issues. They are:

   A. Uncompensated work time in weeks in which Plaintiffs did not work in excess of 40 hours;

   B. Allow Defendants to pay travel work time at rates different than required by the collective bargaining agreement;

   C. Not allow punitive damages under the Illinois Minimum Wage Act; and

   D. Only allow a two-year statute of limitation for FLSA violation and not the three-year limitations period.

2

Defendants should be denied all four for the reasons stated below.

### A. Plaintiffs Are Entitled To Hourly Pay For Each Hour Worked

Defendants raise an obscure defense which they entitle "gap time". This defense attempts to defend that part of the wage and hour violations in Counts I, II, III and IV in which the total weekly hours of paid and unpaid is 40 hours or less. Defendants assert that for all work time at or below 40 hours in a week, an employee of Encotech was paid *on average* at or above the minimum wage rate and therefore there is no minimum wage violation. This argument asks this Court to allow defendants to retroactively reduce the pay rate of the non-drive time hours to below the rate required by the then existing union contracts in order to boost the unpaid hours to minimum wage.

The Federal and State laws are not average minimum wage laws rather they both require minimum payment for each hour worked. The FLSA provides "Every employer shall pay to each of his employees ... wages at the following rates: (1) ... not less than $5.15 an hour beginning September 1, 1997." 29 U.S.C. 206. The Illinois statute is similar. It provides: "Every employer shall pay to each of his employees in every occupation wages of not less than $5.15 per hour." 820 ILCS105/4(2).

Neither statute provides for average minimum wage rates. The treatise *The Fair Labor Standards Act*, Kearns editor, acknowledges that the FLSA requires the payment of the applicable minimum wage for each hour worked at page 521. The treatise does cite two U.S. Supreme Court cases in which employees did not have an established hourly rate and therefore an average hourly rate was applied. In one, the FLSA was found to

3

apply to workers paid on a piece rate basis. *U.S. v Rosenwasser*, 323 U.S. 360 (1945).

The Court stated:

> The fact that § 6 (a) speaks of a minimum rate of pay "an hour," while § 7 (a) refers to a "regular rate" which we have defined to mean "the hourly rate actually paid for the normal, non-overtime workweek," *Walling v Helmerich & Payne*, 323 U.S. 37, 40, does not preclude application of the Act to piece workers. Congress necessarily had to create practical and simple measuring rods to test compliance with the requirements as to minimum wages and overtime compensation. It did so by setting the standards in terms of hours and hourly rates. But other measures of work and compensation are not thereby voided or placed outside the reach of the Act. Such other modes merely must be translated or reduced by compensation to an hourly basis for the sole purpose of determining whether the statutory requirements have been fulfilled. *Overnight Motor Co. v Missel*, 316 U.S. 572, 579; *Walling v Helmerich & Payne, supra*, 40. These hourly standards are not so phrased as reasonably to mislead employers into believing that the Act is limited to employees working on an hourly wage scale. Nor can a court rightly use these standards as a basis for cutting off the benefits of the Act from employees paid by other units of time or by the piece. If that were permissible, ready means for wholesale evasion of the Act's requirements would be provided.

Id. at 363-364.

In the second cited case, the FLSA was also found to apply to an employee working irregular hours for a fixed weekly wage. *Overnight Motor Transport Co. v Missel*, 316 U.S. 572, 573 (1942).

In the case before this Court, all of the members of the certified class were required to be paid on an hourly basis under their respective collective bargaining contracts. Therefore, there is no need to obtain an hourly rate by other means as there was in *Rosenwasser* and *Missel*.

4

Defendants' first attempt to justify the concept of "gap time" is when they misstate the regulatory provision of 29 C.F.R. § 778.322. A full copy of that section is attached as Tab A. Although Part 778 is entitled "Overtime Compensation", defendants refer this Court to Subpart D which is titled "Special Problems" (which applies only to employees who are not paid on a straight hourly basis) and cites to the section entitled: *Reducing the Fixed Workweek for Which a Salary is Paid.* In the case at bar, every plaintiff was paid on an hourly wage basis and no plaintiff was paid a salary. Therefore, this section is not applicable.

Defendants next attempt to justify "gap time" for hourly wage workers by citing to several cases, virtually all of which are so factually different that they are not relevant. *Monahan v Co. of Chesterfield,* 95 F. 3d 1263 (4th Cir. 1996), and *Blankenship v Thurston Motor Lines, Inc.,* 415 F. 2d 1193 (4th Cir. 1969), both involved employees who were paid on a salary basis not an hourly basis. For plaintiffs in those cases, application of 29 CFR 778.322 knocks out the claim for hours under 40 which is not like the case at bar where every plaintiff was hourly paid. *Hensley v MacMillan Bloedel,* 786 F. 2d 353 (1986), and *Dove v Coupe,* 759 F. 2d 167 (1985), involved employees paid piece rate, again not an hourly rate (*Hensley* per mile and *Dove* per assignment). *Birch v Kim,* 977 F. Supp 926 (1997), is also not relevant because the employee was paid hourly plus commission not simply hourly as in the case at hand. *U.S. v Klinghoffer Bros.,* 285 F. 2d 487 (1960), involves criminal prosecution of the FLSA not civil lawsuit for wages, plus the employees worked for and were paid by one company and the unpaid hours were worked for another for which they supposedly were to be compensated an undetermined amount at a later time, *Id.* at 496, again not an hourly arrangement. The sole case which

5

does pertain to an hourly paid worker is *Cuevas v Monroe Street*, 752 F. Supp 1405 (1990). The court in *Cuevas* bases its decision to use an average hourly rate solely on *Klinghoffer*, *Hensley*, *Dove* and *Blankenship*, all of which plaintiffs have shown do not stand for the proposition that employers satisfy 29 U.S.C. §206 by paying an average hourly wage rate which is at or above the minimum wage to employees who are paid solely on the basis of an established hourly rate.

In any event, defendants fail to raise any case to justify this average rate defense as to the Illinois Minimum Wage Act. The Illinois statute expressly states that an employee shall be paid not less than $5.15 per hour. The payment of nothing for all travel time of less than and equal to a recognized hour before the lawsuit was filed violates the statute.

Defendants acknowledge that the Illinois Wage Payment and Collection Act, 820 ILCS 115/1 *et seq.* ("IWPCA"), mandates payment of "all wages earned" or "final compensation". Defendants further admit that in both instances "wages" is defined as "any compensation owed an employee by an employer *pursuant to an employment contract or agreement between the 2 parties.*" 820 ILCS 115/2.

In our case, defendants established the "employment contract or agreement between 2 parties" by consistently paying the then current contract rate of pay for travel time. Thus, the IWPCA needs such "wages" to be paid. Defendants are liable for the difference between what was paid (be it minimum wage or $10.00) and what was required under the contract (as established by Defendants) for every hour worked under (Count II).

Simply put, defendants' "gap time" argument is just an attempt to raise a smoke screen by trying to confuse the rather simple principle of having to pay the workers their normal hourly rate for every hour worked. Defendants would like to pay only a small fraction of that rate which they themselves established: the minimum wage or even $10.00 per hour. If this were allowable under law, scoff-law employers who do not pay their employees for their time, if caught, are rewarded under federal and state laws with only having to pay minimum wage and, worse yet, take credit for amounts already paid, thereby reducing the hourly rate retroactively for work performed and paid for years ago.

On that note, it is important to remember that defendants are seeking a Court ruling condoning paying the union members less than the hourly rate required by the union contract. The hourly rate of the job site hour would be less than the rate required by collective bargaining agreement if this Court allows defendants to average those hours into the lower or zero rate paid for the times before and after the job site,

Another smoke screen is defendants' attempt to raise federal preemption. The preemption issue is not even relevant to our case because, as discussed above, defendants' conduct established the "employment contract or agreement between 2 parties" to pay the regular rate for before and after job site times at the then prevailing contract rate of pay *by paying the contract rate* for travel times they determined to be over one hour. Defendants cannot just unilaterally change that now and call the plaintiffs' attempt to collect their normal pay at the regular rate an interpretation of a union contract which must be preempted.

It is true that *the current contract* between the Laborers Union and the Concrete Contractors Association to which Encotech is bound states:

7

> If a laborer is directed to and does report to the yard prior to the normal starting time, he shall be paid the appropriate wages from the time he arrives at the yard prior to the shift until the time he returns to the yard at the end of the shift.

6-1-01 to 5-31-01 Concrete Contractor Association contract with Laborers Article II paragraph 7. Tab B.

This provision did not appear in the contract until 2001. As such, the newer union contract may be evidence of the fact that the contract now also agrees with the law and reduces to writing the parties' prior agreement and the law's requirement that defendants pay normal wages for those hours worked. This evidentiary use of the union contract is not an interpretation of that contract.

Furthermore, defendants' refusal to honor the contract is evidence of bad faith as associated with traditional common law intentional torts. This not only helps satisfy the "willfulness" element of punitive damages but also allows the union contract to be considered without preempting the IWPCA. *National Metalcrafters v McNeil*, 784 F. 2d 817 (7th Cir. 1986) at 828.

Defendants violated other labor laws of this country by not negotiating with the union to change terms and conditions of employment: to wit, the payment of recognized travel time at the then current contract hourly rate. After the lawsuit was filed and without negotiation with the union, defendants admittedly lessened the travel time wage rate from the then existing contract rates to $5.15 and $10.00 per hour. This violates the National Labor Relations Act. *NLRB v Katz*, 369 U.S. 736 (1962); *NLRB v Zelrich Co.*, 344 F. 2d 1011 (1965) (unilateral wage increase). Plaintiffs could argue that this unilateral change to decrease the hourly rate paid for travel time was retaliation for filing of the lawsuit, a violation of 29 U.S.C. § 215 for which punitive damages are given. *Travis v Gary*

*Community*, 921 F 2d 108 (7th Cir. 1990). Suffice it to say that plaintiffs believe that the IWPCA preemption argument should be rejected by this Court as defendants could be liable not only for the shortage but also punitive damages under the FLSA and the IMWA under a retaliation theory.

### B. Travel Time Must Be Paid At The Contract Wage Rate

Defendants admit to paying recognized travel time that was over an hour at the contract wage rate before the lawsuit was filed. Defendants do not claim that they negotiated non-payment of travel time with any union before the suit or the diminution of the regular rate thereafter. Once defendants regularly paid recognized travel time at the contract rate, it becomes a part of the terms and conditions of plaintiffs' employment. Despite this, defendants without negotiating with the collective bargaining agents, changed the terms and conditions of employment by fiat when they reduced travel time pay to $5.15 and $10.00 per hour. This is not permissible under any labor law of this country for workers who are represented by a collective bargaining agent (union). Defendants cannot defend their volative actions by claiming preemption.

Defendants would have this court presume that the federal labor laws preempt all state laws which also impacts the employment relationship of unionized employees. That has simply never been the case. Plaintiff earlier quotes *Metalcrafters* to show that is not true. Defendants would also have this Court believe that unionized employees lose their FLSA and IMWA rights. That is also not true. While most union contracts better the minimum standards set by the FLSA and IMWA, no union contract can legally allow an employer to go below the minimum standard. *Tennessee Coal v Muscoda Local* 123, 321 U.S. 590 (1944); 820 ILCS 105/1; *Wade v. Tellabs,* Case No. 02 CH 2860 (Circuit Court

9

of Cook County, Chancery Division) Tab C, J. Billick decision. In *Barrentine v Arkansas Best Freight System*, 450 U.S. 728 (1981), the Court stated "[C]ongressionally granted FLSA rights take precedence over conflicting provisions in a collectively bargained compensation agreement." *Id.* at 740-41.

In *Barrentine*, the U.S. Supreme Court held that employees who submitted their wage dispute to grievance proceedings under the collective bargaining agreements are not barred from subsequently filing an action under the FLSA. Even earlier, the U.S. Supreme Court had held in *Iowa Beef Packers v Thompson*, 405 U.S. 228 (1978), that it was not a defense to an FLSA action that an employee failed to exhaust the arbitration procedures under the collective bargaining agreement. These Supreme Court decisions remain valid law to this day because the wage and hour laws of this country are the bedrock of employment relations below which no American employer is allowed to pay not even Encotech. If claims under FLSA are not barred by the collective bargaining there is no reason why the IMWA, which is the state counterpart, would be.

Furthermore, an Illinois Court has found that the IWPCA is not preempted in cases like the case at bar where only the hourly wage rate is borrowed from the contract. See March 25, 1999 Order and June 9, 1999 of J. Getty in *Freeland v EHC*, Case No. 97 CH 14949 (Circuit Court of Cook County, Chancery Division), Tabs D and E.

C.  **Plaintiffs Are Entitled To Punitive Damages Under The IMWA**

Defendants next attempt to argue that their tortured reading of the IMWA precludes individuals from obtaining punitive damages under the statute. Plaintiffs were originally granted standing to seek punitive damages as a remedy under the IMWA. The IMWA was later revised to extend standing to the Department of Labor to also seek

10

punitive damages on behalf of the plaintiff. Nowhere in the legislative history or subsequent case law has a plaintiff's right to seek punitive damages been revoked. Illinois Courts have rejected the identical argument. See page 3 of J. Getty's March 25, 1999 Order, Tab D. This Court need not attempt to reinterpret an Illinois Statute already interpreted by an Illinois Court.

### D. Defendants Willfully Violated The FLSA

Defendants request this Court to rule that they did not willfully violate the FLSA and therefore the 3-year statute of limitation should not be applied. Defendants admit that prior to the institution of this lawsuit they paid the recognized travel time which exceeded an hour at the then contract wage rate. This practice alone justifies entry of judgment on a willful violation of the FLSA because it proves that defendants knew that drive time must be paid at the regular pay rate, yet they willfully failed to pay for such time up to an hour (or paid it at an impermissibly low rate).

Furthermore, the declarations of Karen Elin Johnson, President of Roughneck Concrete Drilling and Sawing Co., and Douglas S. Long, president of Interstate Sawing, Inc., contradict defendants' contention that not paying for time spent before and a job site is customary in the industry. See Tab F and Tab G. This evidence is buttressed by the collective bargaining agreement which in 2001, placed into the agreement, the industry custom of paying for such time at the "appropriate rate".[2] Thus, defendants' pay policies, in contravention of the industry norm, are further evidence of a willful violation.

---

[2] "Appropriate rate" is used because under certain circumstances, premiums over (but never less than) the standard rate are deemed appropriate.

11

In short, there is at the very least factual evidence that the trier of fact could use to find a willful violation. Therefore, the request to summarily find that defendants did not willfully violate the FLSA should be denied.

## CONCLUSION

For any or all of the foregoing reasons, defendants' request for partial summary judgment should be denied in its entirety.

Respectfully submitted

ROBERT O"BRIEN on behalf of himself
and all those similarly situated

By: _____
One of Plaintiffs' Attorneys

Jac A. Cotiguala
Luanne M. Galovich
JAC A. COTIGUALA & ASSOCIATES
30 North LaSalle Street, Suite 1724
Chicago, IL 60602
Telephone: (312) 939-2100
Facsimile: (312) 939-2200

12