Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Joan B. Gottschall | Sitting Judge If Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 00 C 1133 | DATE | 3/22/2004 |
| CASE TITLE | O'Brien, et al. vs. Encotech Construction, et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] ENTER ORDER. It is therefore ordered that Plaintiff's motion for partial summary judgment [75] is granted in part and denied in part. Defendants' motion for partial summary judgment [77] is granted in part and denied in part. All claims for minimum wage and straight time wages are dismissed except for a limited claim under the IWPCA based on employees who, after May 31, 2001, were expressly ordered to report to the yard but were compensated for travel time at $5.15 or $10.00 per hour. A status hearing is set for 04/21/2004 at 9:30 a.m.
(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | MAR 2 3 2004 | |
| | Notified counsel by telephone. | | date docketed | 90 |
| X | Docketing to mail notices. | | | |
| | Mail AO 450 form. | U.S. DISTRICT COURT CLERK | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| RJ/JBG | courtroom deputy's initials | 2004 MAR 22 PM 3:51 | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| O'BRIEN, ET AL., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 00-CV-1133 |
| | ) | |
| ENCOTECH CONSTRUCTION, ET AL., | ) | Judge Joan B. Gottschall |
| | ) | |
| Defendants. | ) | |

DOCKETED
MAR 2 3 2004

### MEMORANDUM OPINION AND ORDER

This case involves allegations that defendant Encotech Construction Services, Inc., failed to pay hourly employees any wages for alleged work time (preparation, travel, and cleanup) before and after the period of the workday that Encotech considered to be compensable time. Also named as a defendant is Howard Frank ("Frank"), the corporate officer who manages Encotech's day-to-day operations and the husband of Encotech's sole shareholder. The failure to pay wages is claimed to be a violation of the employees' contract, federal wage law, and Illinois statutory law.

The Second Amended Complaint contains four counts. Count I is a claim under the Illinois Minimum Wage Law ("IMWL") asserting that the failure to pay any wages for particular work time violated minimum wage requirements of 820 ILCS 105/4 and overtime requirements of 820 ILCS 105/4a. Count II is a claim for unpaid wages under the Illinois Wage Payment and Collection Act ("IWPCA"), 820 ILCS 115/1, et seq. Counts III and IV are Fair Labor Standards Act ("FLSA") claims for failure to pay minimum wage and overtime in violation of 29 U.S.C. §§ 206-07. Count IV alleges that the FLSA violations were willful.

1



As to the Counts III and IV FLSA claims, there is an "opt-in" class consisting of seven named plaintiffs. See 29 U.S.C. § 216(b); King v. General Electric Co., 960 F.2d 617, 621 (7th Cir. 1992); Flores v. Lifeway Foods, Inc., 289 F. Supp. 2d 1042, 1043-45 (N.D. Ill. 2003). As to the Count I and II state law claims, a Fed. R. Civ. P. 23(b)(3) class has been certified that has approximately 45 members. See O'Brien v. Encotech Construction Services, Inc., 203 F.R.D. 346, 350-53 (N.D. Ill. 2001) ("O'Brien I"). The class is defined as:

> All hourly paid persons who received a check from Encotech Construction Services, Inc. for hours worked in any work week during the time period February 1, 1997 through the present.

Id. at 352.[1]

Presently pending are the parties' cross motions for partial summary judgment. Plaintiffs contend that, as to all counts, they are entitled to summary judgment as to liability for the time period from January 28, 1997 through January 31, 2000. Defendants contend they are entitled to summary judgment (a) dismissing all claims for minimum wage; (b) dismissing any claim for work after Encotech changed its compensation policy in May 2000; (c) dismissing state law claims as preempted; (d) dismissing the Count IV willful FLSA violation claim (which would limit the statute of limitations to a two-year period); and, alternatively, (e) dismissing the prayer for punitive damages as to the IMWL claim. The parties do not attempt to resolve questions regarding the particular uncompensated time worked by particular employees. The

---

[1] As of the initial ruling on class certification, certain employees who had signed releases were to be excluded from the Rule 23(b)(3) class. See O'Brien I, 203 F.R.D. at 349-50, 353 & n.1. On reconsideration, however, it was held that the releases were not enforceable as to the state law claims so that these employees were not excluded from the class. See O'Brien v. Encotech Construction Services, Inc., 183 F. Supp. 2d 1047 (N.D. Ill. 2002). It was previously held that the releases were not enforceable as to the FLSA claims. See O'Brien I, 203 F.R.D. at 349.

2

arguments instead focus on which categories of alleged work time are compensable under the federal and state statutes that plaintiffs invoke.

## I. Summary Judgment Facts

On a motion for summary judgment, the entire record is considered with all reasonable inferences drawn and all factual disputes resolved in favor of the nonmovant. Turner v. J.V.D.B. & Associates, Inc., 330 F.3d 991, 994-95 (7th Cir. 2003); Palmer v. Marion County, 327 F.3d 588, 592 (7th Cir. 2003); Abrams v. Walker, 307 F.3d 650, 653-54 (7th Cir. 2002). The burden of establishing a lack of any genuine issue of material fact rests on the movant. Outlaw v. Newkirk, 259 F.3d 833, 837 (7th Cir. 2001); Wollin v. Gondert, 192 F.3d 616, 621-22 (7th Cir. 1999). The nonmovant, however, must make a showing sufficient to establish any essential element for which the nonmovant will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Binz v. Brandt Construction Co., 301 F.3d 529, 532 (7th Cir. 2002); Traylor v. Brown, 295 F.3d 783, 790 (7th Cir. 2002). The movant need not provide affidavits or deposition testimony showing the nonexistence of such essential elements. Celotex, 477 U.S. at 324. Also, it is not sufficient to show evidence of purportedly disputed facts if those facts are not plausible in light of the entire record. See NLFC, Inc. v. Devcom Mid-America, Inc., 45 F.3d 231, 236 (7th Cir.), cert. denied, 515 U.S. 1104 (1995); Covalt v. Carey Canada, Inc., 950 F.2d 481, 485 (7th Cir. 1991); Collins v. Associated Pathologists, Ltd., 844 F.2d 473, 476-77 (7th Cir.), cert. denied, 488 U.S. 852 (1988).

Except where noted, the following facts are undisputed and therefore taken as true for both parties' summary judgment motions. Plaintiffs are current or former employees of Encotech who are paid on an hourly basis. Encotech is in the business of cutting concrete. Defendant Frank is the chief executive officer and secretary-treasurer of Encotech. Frank's wife, Diane Frank, is the president and sole shareholder of Encotech. Diane Frank attends annual meetings but is not involved in the day-to-day operations of Encotech. Defendant Frank is solely responsible for establishing and implementing Encotech's pay practices.

3

Prior to May 2000, Encotech's practice was not to pay employees for time at the beginning of a workday driving from Encotech's yard to a job site nor for time at the end of the workday driving from a job site back to Encotech's yard. There was an exception for travel time of more than one hour; for employees who operated bobcats or a truck that dumps concrete;[2] and for laborers[3] who unloaded debris at the end of the day. As to the more than one hour exception, employees were paid only for time in excess of one hour, and the time was measured by the expected travel time, not the actual travel time that may have resulted from traffic conditions. These compensation rules applied even if the employee performed some or all of the following tasks at the yard prior to traveling to a job site: picking up work orders; filling water tanks on a work truck; hooking up trailers needed for work; safety and operational checks on the work vehicles; and minor repairs on work vehicles.[4] These rules also applied even if the employee performed some or all of the following tasks at the yard after returning to the yard from a job site: unhooking trailers; cleaning up equipment; completing paperwork; and turning paperwork in at the office.[5] It is undisputed that some or all of the named plaintiffs and class members at some time during the relevant time period performed such tasks and were not compensated for their preparation, travel, and cleanup time.

In May 2000, after this lawsuit was filed, Encotech changed its policy to pay for travel time.[6] Encotech began paying the previously uncompensated travel time at $5.15 per hour,

---

[2]Plaintiffs contend that sometimes such employees were not compensated. The cited testimony, however, states only that the employee did not receive compensation for travel time when he was not doing the work of an operating engineer. See Pl. 56.1(a)(3) reply ¶ 5 (citing Giertz Dep. at 34-36).

[3]The parties refer to employees who are laborers, helpers, operators, and drivers, but do not attempt to define these terms.

[4]This type of activity will be referred to as "preparation."

[5]This type of activity will be referred to as "cleanup."

[6]Neither party is clear as to whether this change also applies to preparation and cleanup time.

4

the minimum wage. It subsequently changed its policy to pay $10.00 per hour if the employee worked less than 40 hours that week and $15.00 per hour if the employee worked more than 40 hours that week. It is still Encotech's practice to pay these rates for travel time rather than the higher hourly rates provided for in the applicable collective bargaining agreements.

Employees had the option of filling water tanks at the yard or at the job site. However, if a job site did not have water, it was necessary to fill water tanks at the yard. Employees were sometimes required to pick up work orders and cutting bits at the yard before going to the travel site. Necessary supplies had to be loaded in the trucks before leaving for the job site. Not keeping equipment clean could be a ground for discipline. Employees were never instructed they could not do preparation work at the yard prior to leaving for the job site. Helpers generally traveled to job sites and back to the yard with operators, but were not required to do so. Operators were expected to unload debris at the yard. Laborers were paid half an hour to dump the debris. A factual dispute exists as to whether operators were paid if they assisted in dumping the debris. On Wednesdays, employees customarily returned to the yard at the end of the workday to get their paychecks and pick up supplies (e.g., masks) that they used in their work.

Factual disputes exist regarding how frequently employees performed preparation and cleanup work at the yard, as well as how often it was necessary to do such work at the yard instead of taking the opportunity to do so while on the job site and being compensated. It is undisputed that paperwork was supposed to be completed at the job site; it was not necessary to wait until returning to the yard to complete it. It is undisputed that employees typically arrived at the yard between 15 and 30 minutes before they had to be at the job site. Plaintiffs do not contest Frank's estimation that, on average, employees had an hour a day of uncompensated travel time.

Prior to the filing of this lawsuit in January 2000, most trucks were parked in the Encotech yard at night. Sometimes employees parked the trucks at home. Such employees were not paid to drive the trucks between their homes and job sites. Even if an employee drove a truck from his or her home to the yard to pick up other employees before going to the job site, the employee was not compensated for his or her travel time. The same was true if a driving

5

employee dropped other employees off at the yard before taking the work vehicle to be parked at home. Employees who filled work truck water tanks at home before driving directly to the job site were not compensated for travel and preparation time.

Beginning September 11, 2001, employees parked the trucks in the yard and the trucks were unloaded by others.

During the pertinent time period, Encotech rules regarding compensation for preparation, travel, and cleanup time were not in writing. Records generally were not kept as to the amount of uncompensated travel time and records were not kept as to when employees did preparation or cleanup.

During the time period in question, named and class plaintiffs were members of at least five different unions. Most plaintiffs were represented by the Construction and General Laborers' District Council of Chicago (the "Union").[7] The "Joint Agreement" with the Union, which is a multi-employer collective bargaining agreement, was in effect from June 1, 1998 until May 31, 2001. From June 1998 through May 2000, hourly wages under the Joint Agreement were between $23.65 and $27.80 per hour, except that apprentices received $12.00 per hour. Employees often worked less than 40 hours per week, even if preparation, travel, and cleanup time had been included.

The Joint Agreement did not have an express provision regarding travel time. It defines "covered work" as including "all laboring work in connection with" various activity. The provision defining covered work also states: "in short, all unskilled labor connected with work undertaken by members of the Employer and the handling of all materials, or appliances in any trade where it will be more economical to have the work done by Laborers as may be decided by the Employer, subject to appeal to the decision of the Joint Grievance Committee." There is

---

[7]Neither side attempts to distinguish named plaintiffs or class members who were members of the other unions. Therefore, the arguments relating to collective bargaining agreements with the Union will be assumed to apply to all plaintiffs. Also, it will be assumed that the collective bargaining agreement that preceded the June 1, 1998 Joint Agreement had the same terms as the Joint Agreement.

evidence that, during the time the Joint Agreement was in effect, some employers in the concrete cutting industry paid for preparation, travel, and cleanup time and some did not. There is a factual dispute as to what should be considered the custom in the industry.

The collective bargaining agreement with the Union that has been in effect from June 1, 2001 through the present (the "Concrete Agreement") has a provision that "If a Laborer is directed to and does report to the yard prior to the normal starting time, he shall be paid the appropriate wages from the time he arrives at the yard prior to the shift until the time he returns to the yard at the end of the shift." There is no provision that travel, preparation, or cleanup time is paid at a lower rate. Defendants do not dispute that, since June 1, 2001, this provision requires that travel, preparation, and cleanup time covered by the Concrete Agreement be paid at appropriate rates provided for in that Agreement, which are more than $10.00 or $15.00 per hour.

The two Agreements have grievance procedures. There is no evidence that the Union has ever grieved Encotech's policies regarding paying or not paying for preparation, travel, and cleanup time.

Defendants concede that, prior to May 2000, some or all plaintiffs worked at least some preparation, travel, and cleanup time for which compensation had to satisfy the minimum wage and overtime requirements of the FLSA and the IMWL. There are certain categories of such time, however, that defendants contend would not be compensable time under those statutes.[8]

## II. Principal Activity

The parties apparently agree that employees who drove a work vehicle directly between home and a job site are not entitled to compensation for that time. See 29 U.S.C. § 254(a); Baker v. GTE North Inc., 110 F.3d 28, 29 (7th Cir. 1997). They also agree that, where the employee necessarily stopped at the yard while traveling between home and a job site, the

---

[8]The IMWL generally tracks provisions of the FLSA. Haynes v. Tru-Green Corp., 154 Ill. App. 3d 967, 507 N.E.2d 945, 951 (4th Dist.), appeal denied, 116 Ill. 2d 573, 515 N.E.2d 123 (1987).

7

time between the yard and job site is time covered by the statutes. Plaintiffs contend that there are no time records which show the occasional days that employees may have driven directly between home and a job site in a work vehicle. That factual issue, however, shall remain for trial by whatever method the parties employ in reconstructing uncompensated work time for each employee.

Defendants contend that time helpers spent traveling between the yard and job sites should generally be considered commuting time because they were not required to first report to the yard. As a general matter, this is an accurate statement of the law. Baker, 110 F.3d at 30-31. Compare 29 C.F.R. § 785.38. However, on any day that the helper performed preparation or cleanup that constituted a "principal activity," not just "preliminary" or "postliminary" activity, under 29 U.S.C. § 254(a), the helper's travel time to a job site after preparation or from a job site before cleanup would be time covered by the statutes. See 29 C.F.R. §§ 785.38, 790.4(b)(2), 790.7(c).[9] Preparation or cleanup constitutes principal activity if it is an integral part of the employee's work. Id. §§ 785.24, 790.8(b). An employee may have more than one principal activity; principal activity is not limited to the employee's predominant activity. Id. § 790.8(a).

> ... "[a]n activity is integral to a principal activity if the activity is made necessary by the nature of the work performed, it fulfills mutual obligations between the employer and his employees, the activity directly benefits the employer in the operation of his business, and the activity is closely related to other duties performed by the employees." Hiner v.

---

[9] The activity could also be time covered by the statutes if it is compensable under the terms of a contract or based on custom or practice. 29 U.S.C. § 254(b); 29 C.F.R. §§ 790.9-.10. Undisputed facts show neither of these exceptions apply to the present situation. The contractual exception applies only if the contract provision is express. 29 U.S.C. § 254(b)(1); 29 C.F.R. § 790.9(c). There was no express provision in the Joint Agreement requiring compensation. The express provision in the Concrete Agreement applies only to situations where the employer instructs the employee to first report to the yard. Presently under discussion is the situation where a helper chose to come to the yard to get a ride, but was not required to do so. The custom or practice exception does not apply because it must be a custom or practice at the particular establishment or job site. 29 U.S.C. § 254(b)(2); 29 C.F.R. § 790.10(a). Here, it is uncontested that, at least prior to May 2000, Encotech's practice was to not pay helpers for the travel time. A factual dispute exists as to industry practices. The custom or practice exception of § 254(b)(2), however, is not satisfied by an industry custom or practice. 29 C.F.R. § 790.10(c).

8

> Penn-Harris-Madison Sch. Corp., 256 F. Supp. 2d 854, 859 (N.D. Ind. 2003)(citing Steiner v. Mitchell, 350 U.S. [247,] 252 [(1956)]). Thus, in order for a particular activity to be "integral and indispensable," it must be necessary to the principal activity performed and done for the benefit of the employer. Barrentine v. Arkansas-Best Freight Sys., Inc., 750 F.2d 47, 50 (8th Cir. 1984), cert. denied, 471 U.S. 1054 (1985).

Gonzalez v. Farmington Foods, Inc., 296 F. Supp. 2d 912, 924-25 (N.D. Ill. 2003).

Here, the predominant activity of Encotech's employees was cutting concrete. Having tools, supplies, and equipment available and properly functioning, having water necessary for performing the cutting process, unloading debris, cleaning equipment, and completing paperwork are all activities necessary for the predominant activity of concrete cutting. All these activities benefitted Encotech. These are integral activities that qualify as principal activity, not preliminary or postliminary activity. On any day that a helper performed some preparation at the yard, the helper's travel from the yard to a job site was work covered by the statutes. On any day that a helper performed some cleanup, the helper's travel from the last job site to the yard was work covered by the statutes. Cf. Dunlop v. City Electric, Inc., 527 F.2d 394, 400-01 (5th Cir. 1976); Mitchell v. Mitchell Truck Line, Inc., 286 F.2d 721, 724-25 (5th Cir. 1961); Dole v. Enduro Plumbing, Inc., 1990 WL 252270 *4-5 (C.D. Cal. Oct. 16, 1990).

Defendants contend that the performance of principal activities at the yard does not make travel time compensable because Encotech did not require that these activities be performed at the yard and that they could have instead been performed at job sites. That may be true of some activities, but not all. Water was not always available at the job site. Loading of additional supplies and equipment had to be performed at the yard. Performing inspections or repairs of equipment after leaving the yard would not be practical. Unloading of debris had to be performed at the yard. Even if not required to perform particular activities at the yard, employees were not told to discontinue performing those activities at the yard. They were still performing principal activities that benefitted Encotech before and after traveling to job sites. Defendants cite no case law holding that travel time after performing principal activity is not covered simply because the employer did not absolutely require that the activity be performed prior to travel.

9

Nothing in the regulations supports such a holding.

Contrary to defendants' argument, regulations provide that "[w]ork not requested but suffered or permitted is work time." 29 C.F.R. § 785.11. "[I]t is the duty of the management to exercise its control and see that the work is not performed if it does not want it to be performed. It cannot sit back and accept the benefits without compensating for them." Id. § 785.13. However, the work is not considered to have been "suffered or permitted" unless the employer knew or should have known that it was being performed. Id. § 795.11; Kosakow v. New Rochelle Radiology Associates, P.C., 274 F.3d 706, 718 (2d Cir. 2001); Cunningham v. Gibson Electric Co., 43 F. Supp. 2d 965, 975 (N.D. Ill. 1999). Knowledge of a supervisor is imputed to the employer, and it is sufficient that a manager or supervisor, acting with reasonable diligence, had the opportunity to acquire the knowledge. Cunningham, 43 F. Supp. 2d at 975 (quoting Reich v. Department of Conservation & Natural Resources, 28 F.3d 1076, 1082 (11th Cir. 1994)). Here, it is uncontested that Frank did not have actual knowledge that helpers did preparation before traveling to a job site. Nevertheless, it is also uncontested that work at a job site generally began at 7:00 a.m. and that a management employee was generally at the yard at 6:00 a.m. The preparation work was done in the yard. A supervisor would have or should have known that helpers were engaging in preparation activity. Supervisory employees of Encotech also would have had the opportunity to observe cleanup activity.

If principal activity was performed before travel time or after travel time, the travel time was covered activity even if the principal activity could have been performed at the job site instead of at the yard.

### III. Minimum Wage – "Gap Time"

Defendants argue that no plaintiff is entitled to damages based on a minimum wage violation because every plaintiff's average hourly pay for any given workweek always exceeded minimum wage. For example, if an employee was paid $320.00 based on $10.00 an hour for working 32 hours, but should have been considered to have performed an additional 8 hours of preparation, travel, and cleanup work, he or she arguably still received minimum wage because

10

he or she received $320.00 for 40 hours of work, which is an average of $8.00 per hour and above the applicable minimum wage of $5.15 per hour. Defendants limit this argument to those workweeks in which the employee's total hours were 40 hours or less. Courts have used the term "gap time" to refer to "time that is not covered by the overtime provisions because it does not exceed the overtime limit, and . . . time that is not covered by the minimum wage provisions because, even though it is uncompensated, the employees are still being paid a minimum wage when their salaries are averaged across their actual time worked." Adair v. City of Kirkland, 185 F.3d 1055, 1062 n.6 (9th Cir. 1999).

The regulations do not specifically provide that minimum wage is to be computed on a workweek basis rather than on an hour-by-hour basis. There is, however, an emphasis on the workweek as a basic standard. See 29 C.F.R. § 776.4(a); O'Brien v. Town of Agawam, 350 F.3d 279, 298 (1st Cir. 2003). See also 29 C.F.R. §§ 778.103-.104; 778.322, 778.324 (overtime regulations). Although Department of Labor regulations do not provide that minimum wage is to be computed on a workweek basis, the Department of Labor has issued opinions adopting such a standard. See Dove v. Coupe, 759 F.2d 167, 171-72 & n.8 (D.C. Cir. 1985). Case law has generally applied such a standard as well. See id.; Hensley v. MacMillan Bloedel Containers, Inc., 786 F.2d 353, 357 (8th Cir. 1986); United States v. Klinghoffer Brothers Realty Corp., 285 F.2d 487, 490 (2d Cir. 1960); Birch v. Kim, 977 F. Supp. 926, 930-31 (S.D. Ind. 1997); Cuevas v. Monroe Street City Club, Inc., 752 F. Supp. 1405, 1416-17 (N.D. Ill. 1990). But compare Lamon v. City of Shawnee, Kan., 972 F.2d 1145, 1155 (10th Cir. 1992), cert. denied, 507 U.S. 972 (1993) (adopting opinion below, 754 F. Supp. 1518, 1521 & n.1 (D. Kan. 1991)). Plaintiffs attempt to distinguish the various cases as involving pay provisions other than on a straight hourly basis. Cases involving hourly wages plus other compensation, however, are not materially distinguishable. Moreover, Klinghoffer and Cuevas involved compensation calculated on an hourly basis only; the fact that Klinghoffer involved a criminal prosecution did not change the standard applied in determining whether there had been a minimum wage violation. The court will follow these cases.

11

There is no evidence, or even contention, that any plaintiff received pay for a workweek that averaged below $5.15 per hour. Therefore, defendants are entitled to summary judgment dismissing the FLSA claims for minimum wage violations.

Plaintiffs contend the IMWL must be separately considered, but point to no reason for concluding that it should be construed differently from the FLSA regarding gap time. It is generally held that the IMWL parallels federal law, and the Illinois Administrative Code provides that federal FLSA regulations provide guidance in interpreting the IMWL. Haynes, 507 N.E.2d at 951. The same analysis generally applies to both the FLSA and IMWL. Id.; Laboy v. Alex Displays, Inc., 2003 WL 21209854 *2 (N.D. Ill. May 21, 2003); Bjornson v. Daido Metal U.S.A., Inc., 12 F. Supp. 2d 837, 842 (N.D. Ill. 1998). The IMWL minimum wage claims will therefore also be dismissed.

### IV. IWPCA Unpaid Wages Claim

Even if not a violation of minimum wage laws, defendants potentially owe plaintiffs for uncompensated preparation, travel, and cleanup time that breached contractual obligations. The problem with this claim, however, is that the contractual relationship between plaintiffs and Encotech is governed by collective bargaining agreements and those agreements require that claimed contractual violations be pursued through the grievance procedures outlined in the agreements. No grievance was pursued and plaintiffs do not attempt to bring a "hybrid" or any other type of claim pursuant to § 301 of the Labor Management Relations Act, 29 U.S.C. § 185. See generally Neal v. Newspaper Holdings, Inc., 349 F.3d 363, 368 (7th Cir. 2003); Gonzalez, 296 F. Supp. 2d at 936. Instead, plaintiffs attempt to enforce contractual wage obligations by means of a state law IWPCA claim. Problematically, § 301 preempts state law claims that require interpretation of a collective bargaining agreement.

> Whether Section 301 operates to preempt a state law claim entails a "case-by-case factual analysis." In re Bentz Metal Prods. Co., 253 F.3d 283, 285 (7th Cir. 2001). However, not every dispute that tangentially involves a provision of a collective bargaining agreement is preempted by federal law. Allis-Chalmers [Corp. v. Lueck], 471 U.S. [ 202,] 211 [(1985)]. Thus, preemption will not occur if a dispute merely references or requires consultation of a collective bargaining agreement.

12

> Livadas v. Bradshaw, 512 U.S. 107, 124 (1994); In re Bentz, 253 F.3d at 285. Preemption is triggered when a claim is "founded directly on rights created by collective bargaining agreements," (Caterpillar, Inc. v. Williams, 482 U.S. 386, 394 (1987)) and when the resolution of a state law claim "depends on the meaning of, or requires the interpretation of, a collective bargaining agreement." Loewen Group Int'l, Inc. [v. Haberichter], 65 F.3d [1417,] 1421 [(1995)] (citing Lingle [v. Norge Division of Magic Chef, Inc.], 486 U.S. [399,] 405-06, 407, 409-10, [(1988)]). Put differently, a claim is preempted if it is "substantially dependent on analysis of a collective-bargaining agreement." Atchley v. Heritage Cable Vision Assocs., 101 F.3d 495, 499 (7th Cir. 1996) (citations omitted). If the meaning of a contract term is at the heart of the dispute, Section 301 will have preemptive effect. Livadas, 512 U.S. at 124; Caterpillar, 482 U.S. at 394. Thus, "[e]ven if explicit terms of the collective bargaining agreement may not be on point, it is a matter of federal contract interpretation whether the words of a collective bargaining agreement create implied rights." Atchley, 101 F.3d at 499. Therefore, "if it is necessary to interpret express or implied terms of a [collective bargaining agreement], a state law claim is deemed federal in nature." Id.
>
> The Supreme Court has stated, though, that "'when the meaning of contract terms is not the subject of dispute, the bare fact that a collective-bargaining agreement will be consulted in the course of state-law litigation plainly does not require the claim to be extinguished.'" Loewen, 65 F.3d at 1421 (quoting Livadas, 512 U.S. at 124); see also Milne Employees Ass'n v. Sun Carriers, 960 F.2d 1401, 1409-10 (9th Cir. 1991), cert. denied, 508 U.S. 959 (1993). The Supreme Court further stated that "'it is the legal character of a claim, as 'independent' of rights under the collective-bargaining agreement that decides whether a state cause of action may go forward'" and also noted that "'§ 301 cannot be read broadly to preempt nonnegotiable rights conferred on individual employees as a matter of state law.'" Loewen, 65 F.3d at 1421 (quoting Livadas, 512 U.S. at 123-24) (citations omitted).

Gonzalez, 296 F. Supp. 2d at 934-35.

Here, the Joint Agreement contained no clear provision requiring that wages be paid for preparation, travel, and cleanup time. Arguably, such a requirement was implicit in the terms of the Joint Agreement or was implied by industry custom or practice. Resort to implied requirements, though, calls for interpretation of the Joint Agreement, which would result in the IWPCA claim being preempted. Plaintiffs argue that the rates for this work time were established by Encotech's decision to pay travel time over one hour at the rates contained in the Joint Agreement. They argue that this does not constitute interpretation or enforcement of the Joint Agreement, but enforcement of a separate, unwritten agreement to pay these rates for

13

preparation, travel, and cleanup time that falls outside the coverage of the Joint Agreement. But plaintiffs also argue that Encotech's unilateral decision to pay travel time at $5.15 per hour and later at $10.00 or $15.00 per hour was an unfair labor practice in violation of the National Labor Relations Act in that Encotech unilaterally modified the terms of a collective bargaining agreement. See 29 U.S.C. §§ 158(a)(5), (d); Naperville Ready Mix, Inc. v. NLRB, 242 F.3d 744, 755 (7th Cir.), cert. denied, 534 U.S. 1040 (2001). Despite plaintiffs' attempt to posit an agreement separate from the parties' collective bargaining agreement, any decision as to an obligation to pay for the preparation, travel, and cleanup time is dependent on interpretation of provisions of the Joint Agreement that are not clear and indisputable. The IWPCA claim for the time period covered by the Joint Agreement is preempted.

Beginning June 1, 2001, the Concrete Agreement was in effect. It is unclear whether much, if any, uncompensated and disputed preparation, cleanup, and travel time occurred after that date. The Concrete Agreement contains an express provision regarding travel time. The express provision, however, is still subject to interpretation. It applies only if employees are "directed" to report to the yard. In light of evidence that defendants may have acquiesced in permitting employees to report to the yard, determining the effect of this provision requires interpretation of at least one provision of the Concrete Agreement.

There may be situations, however, in which it is undisputed that compensation was required under the Concrete Agreement, even though Encotech chose to compensate employees at a noncontractual rate of $5.15 or $10.00 per hour. Defendants do not rely on any provision of the Concrete Agreement to justify payment at a different rate from that provided in the Concrete Agreement. Resolution of such a claim would not require interpretation of the terms of the Concrete Agreement. Thus, with respect to the period in which the Concrete Agreement was in effect, the court can properly order defendants to pay plaintiffs at the contract rate, rather than a lesser rate, for hours of travel time that defendants agree is compensable. Plaintiffs' Count II

IWPCA claim will be dismissed except as to this limited situation.[10]

It may be that plaintiffs received no pay or only $5.15 or $10.00 per hour for preparation, travel, and cleanup time that the applicable collective bargaining agreement required be paid at the rates provided for in the agreement. The appropriate forum for resolving such claims, however, was the grievance procedure provided for in the agreements and, possibly, a § 301 lawsuit filed by an appropriate party after the exhaustion of grievance remedies. No grievance proceedings having been instituted, the present lawsuit is an inappropriate proceeding for resolving questions as to the appropriate contractual rate for nonovertime, Gonzalez, 296 F. Supp. 2d at 936.

### V. Overtime Claims

To the extent plaintiffs make out claims for unpaid preparation, travel, and cleanup time in workweeks for which they worked more than 40 hours (including the previously unpaid time), plaintiffs are entitled to all hours up to 40 hours being paid at regular rates and hours above 40 hours being paid at one and one-half times regular rates. See 29 C.F.R. § 778.315; Reich v. Midwest Body Corp., 843 F. Supp. 1249, 1251-52 (N.D. Ill. 1994). See also 29 C.F.R. §§ 778.107, 778.110(a), 778.223. Cf. id. § 778.322. Such claims for unpaid overtime are not precluded because plaintiffs failed to pursue grievances under the applicable collective bargaining agreements. See Belbis v. County of Cook, 2002 WL 31600048 *3-4 (N.D. Ill. Nov. 18, 2002), reconsideration granted in part on other grounds, 2003 WL 187407 (N.D. Ill. Jan. 27, 2002). See also Schwertfeger v. Village of Sauk Village, 2001 WL 293115 at *3 (N.D. Ill. March 23, 2001). These hours having been otherwise unpaid, the regular pay rates under the applicable collective bargaining agreements will be used to determine appropriate regular pay up to 40 hours in a workweek and appropriate time and one-half for the hours above 40.

---

[10] As is discussed regarding overtime, resolution of overtime claims does not necessitate an interpretation of the collective bargaining agreements. The IMWL overtime claims are not preempted.

15

Unlike the preparation, travel, and cleanup time for which no compensation whatsoever was paid, preparation, travel, and cleanup time which was paid at rates of $5.15 or $10.00 per hour is treated differently. As previously discussed, determining whether the collective bargaining agreements required that the agreements' pay scales be paid for such time requires interpretation of the agreements.[11] In that situation, case law holds that the employee will not be able to avoid his or her failure to pursue a grievance under the collective bargaining agreement; instead, the rate actually paid for straight time will be treated as the regular rate of pay. Vadino v. A. Valey Engineers, 903 F.2d 253, 265-66 (3d Cir. 1990); Bester v. Chicago Transit Authority, 1991 WL 249732 *1 (N.D. Ill. Nov. 15, 1991). In those situations where a plaintiff was paid $5.15 or $10.00 per hour, that will be treated as part of the plaintiff's regular rate of pay in computing amounts due for unpaid overtime.

Defendants further contend that, where travel time was paid at $5.15 or $10.00 per hour, any overtime travel time may appropriately be paid at one and one-half those rates. On the facts before the court, that is an incorrect application of the statutory overtime provisions. Defendants rely on 29 U.S.C. § 207(g)(2), which provides that, "in the case of an employee performing two or more kinds of work for which different hourly or piece rates have been established," it is not a violation of overtime provisions if overtime "is computed at rates not less than one and one-half times such bona fide rates applicable to the same work when performed during nonovertime hours." See also 29 C.F.R. § 778.419. Arguably, § 207(g)(2) would apply to overtime travel for those plaintiffs who were paid a different nonovertime rate for travel time than for other nonovertime work.

Section 207(g)(2) is an exception to the usual overtime rules for which defendants bear the burden of proof. Mathias v. Addison Fire Protection District No.1, 43 F. Supp. 2d 916,

---

[11]As previously discussed, there is no dispute as to the applicability of Concrete Agreement rates to certain preparation, travel, and cleanup performed after that Agreement went into effect. As to that limited exception, the regular rate of pay will be considered to be the rates contained in the Concrete Agreement even if Encotech paid the employee at the $10.00 or $15.00 rate.

16

921 (N.D. Ill. 1999). To satisfy their burden, defendants must show the following:

>(1) the employee must perform two or more kinds of work;
>
>(2) the employer must establish a bona fide hourly rate for those different kinds of work;
>
>(3) the compensation must be paid pursuant to an agreement or understanding arrived at between the employer and the employee in advance of the performance of the work; and
>
>(4) the compensation must be computed at rates not less than one and one-half times such rates applicable to the same work when performed during nonovertime hours.

Id. at 920-21.

Uncontested evidence shows that this exception is not applicable. The evidence indicates that defendants unilaterally imposed the rates, not that the rates were reached by agreement in advance of the work being performed. Even if, at some point in time, an understanding arguably existed, defendants fail to satisfy another requirement as well. The rate cannot be found to be a bona fide rate in that defendant compensated some nonovertime preparation, travel, and cleanup at the higher rates provided for in the applicable collective bargaining agreement. If the rates are not consistently paid for the same type of work, they are not bona fide rates. 29 C.F.R. § 778.419(b).

Since the § 207(g)(2) exception does not apply, Encotech was required to pay overtime at one and one-half the employee's regular rate, not one and one-half of the employee's travel time rate. As to those employees who were paid two different nonovertime rates within the same workweek, the regular rate that is the basis for computing overtime pay should be the employee's weighted rate for nonovertime hours worked. See 29 C.F.R. § 778.115. Thus, it was improper simply to pay such an employee $15.00 for travel time incurred during a week in which the employee worked more than 40 hours. Instead, a weighted average had to be determined for that workweek, and overtime paid at one and one-half that rate.

## VI. Willfulness

The last question to consider is whether defendants' violations of overtime provisions were willful. A showing of willfulness is required both for a three-year statute of limitations for the FLSA claim, see 29 U.S.C. § 255(a), and for punitive damages for the IMWL violations, see 820 ILCS 105/12(a). Defendants argue that their conduct could not have been willful because they followed industry custom and practice. It need not be decided if that would be conclusive evidence of a lack of willfulness since disputed factual issues exist as to industry custom and practice. Plaintiffs do not point to conclusive evidence establishing willfulness. Willfulness is a disputed factual issue for trial.

## VII. Conclusion

Plaintiffs' claims for minimum wage and straight time wages are all being dismissed except for a limited claim under the IWPCA for employees who, after May 31, 2001, were expressly ordered to report to the yard but were compensated for travel time at $5.15 or $10.00 per hour. Claims for overtime pay under both the FLSA and IMWL remain pending, including claims for punitive damages under the IMWL and claims based on a three-year statute of limitations under the FLSA. Defendants concede there is some liability for overtime pay, but plaintiffs have not identified specific plaintiffs for whom a liability will be due. Plaintiffs' motion for partial summary judgment is granted in part, but the order will not state, as plaintiffs request, that summary judgment on liability is being granted. The question of whether the order should state that summary judgment is granted as to liability is a semantical issue of no import or effect. The uncontested facts, statements of contested issues, and proposed jury instructions contained in the final pretrial order must be fully consistent with today's ruling and neither party will be permitted to make any argument to the jury that is inconsistent with today's ruling.

Prior to setting a date for submission of a final pretrial order, the parties shall first make a good faith effort to settle this case in light of today's ruling. Within two weeks from the date of today's order, plaintiffs shall serve a written demand for settlement upon defendants. Defendants shall respond within one week thereafter. A status hearing will be held on

Case 1:00-cv-01133 Document 90 Filed 03/22/04 Page 20 of 20

_April 21_, 2004 at 9:30 a.m. At the status hearing the parties shall report on the likelihood of settlement. If settlement does not appear likely, a short date will be set for submission of the final pretrial order.

IT IS THEREFORE ORDERED that plaintiffs' motion for partial summary judgment [75] is granted in part and denied in part. Defendants' motion for partial summary judgment [77] is granted in part and denied in part. All claims for minimum wage and straight time wages are dismissed except for a limited claim under the IWPCA based on employees who, after May 31, 2001, were expressly ordered to report to the yard but were compensated for travel time at $5.15 or $10.00 per hour. A status hearing is set for _April 21_, 2004 at 9:30 a.m.

ENTER:

JOAN B. GOTTSCHALL
United States District Judge

DATE: 3/22/04